620 So.2d 281 (1993)
CIRCLE FOOD STORES, INC., A/K/A Circle Foods Store, Inc., on Its Behalf and on Behalf of All Similarly Situated Class Members
v.
The CITY OF NEW ORLEANS and Paul Mitchell, Jr., Director of Finance of the City of New Orleans.
No. 93-CA-0332.
Supreme Court of Louisiana.
July 1, 1993.
Rehearing Denied September 2, 1993.
*282 William D. Aaron, Jr., City Atty., Dan Zimmerman, Brett J. Prendergast, New Orleans, for applicant.
William F. Grace, Jr., Andrew Rinker, Jr., Charles P. Blanchard, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for respondent.
HALL, Justice.[*]
In Reed v. City of New Orleans, 593 So.2d 368 (La.1992), this court found that the City of New Orleans Tobacco Consumption Privilege Tax ("Tobacco Tax I") imposed a sales, use and consumption tax exceeding three percent and was enacted by the City Council without legislative authorization and voter approval; thus, we held Tobacco Tax I unconstitutional as violative of La. Const. Art. VI, § 29. A few days after we handed down our decision in Reed, supra, the New Orleans City Council enacted the Tobacco Products Special Tax ("Tobacco Tax II"), which is the subject of the instant direct appeal. The ordinance in question (the "Ordinance") recites the City's desire to continue to tax tobacco products and describes this as "a temporary measure while continuing to work with the tobacco industry to find a permanent revenue solution for the City while addressing the concerns of the industry."[1]
Circle Food Stores, Inc., a/k/a Circle Food Store, Inc. ("Circle"), a retailer on whom the tax is imposed, gave notice to the City that it was paying its June 1992 (and future months) taxes under protest and commenced the instant class action,[2] seeking to have the Ordinance enacting Tobacco Tax II declared unconstitutional for basically *283 the same reasons as in Reed.[3] Crossmotions for summary judgment followed. In ruling on those motions, the district court declared the Ordinance unconstitutional, finding it violated La. Const. Art. VI, § 29, and ordered the City to refund to the certified class members the taxes paid under protest. The City appealed directly to this court. La. Const. Art. V, § 5(D). We affirm.

I.
The City correctly argues that under its home rule charter it can enact any tax not in conflict with the Constitution. Radiofone, Inc. v. City of New Orleans, 616 So.2d 1243 (La.1993) (collecting cases); Reed, supra. Indeed, as we opined in Reed, the City, by virtue of its home rule charter, possesses self-executing taxing authority, but the constitution caps that authority at three percent. 593 So.2d at 370-71; La. Const. Art. VI, § 29; Oreck, Louisiana Sales & Use Taxation § 1.4[1](a) (1993 Supp.) (citing Reed, supra). Although additional sales taxes are constitutionally authorized, municipalities may not impose a sales, use or consumption tax in excess of three percent without legislative authorization and approval by a majority of the electors at an election for that purpose. Reed, 593 So.2d at 371. The constitutional provision thus both authorizes and limits the authority of municipalities to levy taxes on sales at retail, use and consumption of tangible personal property (i.e., taxes on the sale of finished goods to consumers), which in all likelihood will be passed on to consumers. Obviously, the framers of the constitution intended to give consumers a voice in authorizing regressive taxes that ultimately will fall on them.
If Tobacco Tax II is a sales, use or consumption tax as contemplated by La. Const. Art. VI, § 29, it is unconstitutional and a nullity because when coupled with other such taxes levied by the City it exceeds three percent and was not authorized by the legislature or approved by the voters. The question in this case thus becomes whether Tobacco Tax II is such a tax subject to this constitutional provision. For the reasons that follow, we find it is.

II.
The City argues that Tobacco Tax II is not such a tax. Specifically, the City contends it is not a sales, use or consumption tax, but rather an "ownership" tax imposed on the privilege of owning tobacco products. Continuing, the City points out that unlike Tobacco Tax I, which we condemned in Reed, Tobacco Tax II: (1) is imposed on retailers, not on consumers; (2) does not require the retailer to pass it on to consumers; (3) gives retailers the option of paying it either at the time of purchase or at the time of sale; and (4) is a flat amount of the quantity of the product, not a percentage of the value or sales price.
Conversely, Circle contends that while Tobacco Tax II is difficult to pigeon-hole into one of the categories, it is either a sales, use or consumption tax, all of which are subject to the strictures of La. Const. Art. VI, § 29. Further, Circle argues that contrary to the City's contention, the taxes subject to this constitutional provision are not limited to those mirroring the characteristics of Tobacco Tax I, as delineated in Reed. In any event, Circle takes issue with each of the distinguishing factors the City pointed out between Tobacco Tax I and Tobacco Tax II; each of these distinguishing factors, Circle contends, is of no significance. First, this tax, albeit only indirectly, is imposed on the consumers. That this was the City's intent, Circle submits, is evidenced by the City's policy statement set forth in the Ordinance that one of the purposes for this tax is to "discourage [consumer] use of [tobacco] products, for the reason that tobacco products have been found to be harmful to the health of users as well as non-users of said products." Second, merely because the ordinance does not expressly require the retailer to pass on the tax to the consumer does not mean *284 that the consumer will not bear the ultimate brunt of the tax. Third, the option given to retailers of paying the tax either at purchase or at sale is, at best, a fiction; in reality, the incident of the tax is at the time of sale as otherwise no tax is due. Finally, that the tax is measured by a flat amount levied on the quantity of the product, as opposed to a percentage of the sales price, is irrelevant. Indeed, the state tobacco tax utilizes an identical tax measure, a flat amount per unit, and expressly states that it is a tax on the sales, use and consumption of tobacco products. LSA-R.S. 47:841. In short, Circle contends that Tobacco Tax II is simply a subterfuge to get around this court's holding in Reed.

III.
On January 23, 1992, the City Council, without legislative authorization and without voter approval, enacted the Ordinance, repealing Tobacco Tax I and creating Tobacco Tax II. Designated as Chapter 63-A of the City Code, the Ordinance levies a special tax on the ownership of three specifically defined categories of tobacco product: cigarettes, cigars and other forms of tobacco. The tax is levied at a fixed rate per unit.[4] The tax is owed by the owner and due, at the owner's option, on the last day of the month in which ownership either begins (purchase) or ends (sale). Three classes of tobacco product owners are exempted: (1) owners of products which are in interstate commerce, (2) manufacturers or registered wholesalers, and (3) owners who purchase such products for direct consumption or use. It follows that by exempting manufacturers, wholesalers, and consumers, the ordinance imposes the tax solely on retailers. Indeed, the policy statement set forth in the Ordinance confirms this intent.[5]
To allow determination of the amount of tax due, taxpayers are required to submit monthly returns to the Director of Finance on prescribed forms, showing such information as the Director may require. Further, taxpayers are required to keep and preserve suitable records of the sales or purchases of tobacco products, including, at a minimum, "individual receipts, tickets or copies thereof or a cash register receipt tape totaled daily with the corresponding date marked thereon." Still further, taxpayers' records must be maintained "so as to readily reflect gross sales."
As mentioned, the Ordinance contains several policy statements. First, as Circle points out, the tax levied by the Ordinance is designed to discourage consumer use of tobacco products. Second, as alluded to above, the Ordinance provides that the tax is levied solely on retailers so as to impose the tax only once in the chain of title from grower to end-users. Finally, the Ordinance contains an express disclaimer: "[t]he tax imposed by this chapter is not a tax for the privilege of engaging in the business of selling tobacco products, nor a tax on the sale, use or consumption of tobacco products." With regard to the disclaimer, we note the settled rule that a tax is classified not by the language contained in the enacting legislation, but by its incidents, attributes and operational effects. Reed, supra; City of New Orleans v. Scramuzza, 507 So.2d 215, 218 (La.1987); see also City of New Orleans v. Christian, 229 La. 855, 87 So.2d 6, 8 (1956).
Reed delineates several criteria for determining whether the incidents, attributes and operational effects of a given tax are those of a sales or use tax; specifically, it provides:
The tax is due and payable at the time of the sale or purchase. The tax is levied on the purchaser and collected by *285 the seller. [2] The seller cannot assume the tax and must collect it from the purchaser. [3] The tax is calculated as a percentage of the retail sales price. [4] The tax ordinance closely tracks the form and substance of the state general sales and use tax, LSA-R.S. 47:301 et seq., the only significant difference being that the tax is limited to one group of commodities, tobacco products.
593 So.2d at 371. As Circle correctly contends, the Reed criteria are not exclusive. Nonetheless, these four criteria provide a guidepost for our analysis of the issue before us.

(i) The tax is due and payable at the time of the sale or purchase.
Tobacco Tax II expressly provides the retailer with the option of paying the tax either at the time of purchase or at the time of sale. However, as Circle correctly contends, this option is illusive. In reality, the tax becomes due only after the sale of the product by the retailer to the consumer. Until the sale takes place, the retailer is not obligated to pay the tax. The sale to the consumer is thus the triggering event that gives rise to a tax debt; until that event, no tax liability exists. It follows then that in all likelihood the retailer will ultimately pass the tax on to the consumer.

(ii) The seller cannot assume the tax and must collect it from the purchaser. The lack of a mandatory requirement that the retailer pass on the tax to the consumer is neither dispositive, nor of any great significance in determining the status of the tax. Indeed, as one commentator aptly articulates:
[P]rovisions in the law relating to shifting of the tax are not likely to be of great significance. A tax levied on sales will tend to shift forward in the form of higher prices whether required by law or not, and retailers who seek to absorb the tax for competitive reasons can easily do so despite mandatory shifting provisions...
Due, The Nature and Structure of Sales Taxation, 9 Vand.L.Rev. 123, 130-31 (1956). As we noted in Reed, "[t]he realities and substance of the tax must be examined, not its form." 593 So.2d at 371. The reality, as noted above, is that in all likelihood the retailer will pass the tax on to the consumer. Hence, it matters not that the tax is not levied directly on the consumer.

(iii) The tax is calculated as a percentage of the retail sales price.
Nor does it matter that the tax rate is calculated as a flat amount per unit of product rather than as a percentage of the sales price. As Circle points out, the same measurement, per unit, is used in the state tobacco tax, which is described in the statute itself as a tax on the sale, use and consumption of tobacco. LSA-R.S. 47:841. Both the state tobacco tax and Tobacco Tax II are imposed as a flat amount per cigarette or per given quantity of other tobacco products. Thus, that Tobacco Tax II is calculated based on a per unit, as opposed to a percentage of sale price, is not determinative of its classification.

(iv) The tax ordinance closely tracks the form and substance of the state general sales and use tax.
The Ordinance in question contains detailed reporting and record keeping requirements, including, among other things, that the retailer keep records of and report gross sales. These reporting and record keeping requirements applicable to Tobacco Tax II are strikingly similar to those applicable to the state general sales and use tax and the City of New Orleans general sales tax. See LSA-R.S. 47:309; New Orleans City Code § 56-53. Additionally, as discussed above, the measurement employed to calculate Tobacco Tax II is strikingly similar to that employed to calculate the state tobacco tax, which by its terms is a sales and use tax.
In sum, while all four Reed criteria for determining whether the incidents, attributes and operational effects of a given tax are those of a sales and use tax are not precisely satisfied by Tobacco Tax II, these criteria are not exclusive, and the tax in *286 operational effect has the essential characteristics of a sales, use or consumption tax.

IV.
Our finding is buttressed by the fact that Tobacco Tax II has the incidents of another form of sales or use tax, a consumption tax. A consumption tax is one "applying to commodities intended for consumption and the burden of which falls on the consumer." Reed, 593 So.2d at 371. Tobacco Tax II is a tax on tobacco consumption, being a tax on a finished product levied after the sale of the product to the consumer. Moreover, the policy statement in the Ordinance regarding the prophylactic nature of the taxdiscouraging tobacco consumptionis indicative of a consumption tax. Studenski, Characteristics, Developments and Present Status of Consumption Taxes, 8 Law & Contemp.Probs. 417, 419 (1941) (noting that consumption taxes are often based on "the desire to curtail certain types of consumption deemed injurious to public health, morals, or welfare.")

V.
Accordingly, we hold that Tobacco Tax II is a tax on the sale at retail, use or consumption of tangible personal property, namely tobacco products. By imposing the tax on the retailer and postponing imposition of the tax until after the sale at retail, the sale at retail is clearly the triggering event that gives rise to the tax liability. Undoubtedly, in most instances the retailer will pass the tax on to the consumer. Thus, the tax is on the sale at retail and must meet the requirements of La. Const. Art. VI, § 29. Since the tax together with other sales taxes being levied by the City exceeds three percent and the tax received neither legislative authorization nor voter approval, it was enacted in violation of La. Const. Art. VI, § 29 and thus is a nullity.
The judgment of the district court is affirmed.
AFFIRMED.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Watson, J. was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] In fact, the effective date for the imposition of the tax is May 1, 1992, through midnight on December 31, 1992. The record before us does not reflect whether the tax has been extended beyond that date.
[2] The certified class is comprised of the following:

Retailers of tobacco products in Orleans Parish who are members of the Louisiana Retailers Association, who pay and are subject to the City of New Orleans Tobacco Products Special Tax, and who have or will remit to the City of New Orleans the Tobacco Products Special Taxes under protest.
[3] While Circle additionally raises an equal protection argument, we find it unnecessary to address that argument in light of our finding that Tobacco Tax II is constitutionally infirm as violative of La. Const. Art. VI, § 29.
[4] The fixed unit rate is one cent per cigarette or per cigar, thirty cents per package containing two ounces or less of tobacco, and fifty cents per package containing more than two ounces of tobacco.
[5] In this regard, the ordinance reads: "[i]n order to avoid discouraging the development of manufacturing and wholesaling enterprises in the city and in order to avoid the collecting difficulties associated with taxing end-users, who seldom will own tobacco products in economically-taxable quantities, the Council has deemed it appropriate to exclude these classes of owners from taxation and to tax the ownership of the products at an intermediate level."