624 So.2d 890 (1993)
COX CABLE NEW ORLEANS, INC.
v.
The CITY OF NEW ORLEANS, et al.
COX CABLE NEW ORLEANS, INC.
v.
Paul MITCHELL, etc.
No. 92-WA-2311.
Supreme Court of Louisiana.
September 3, 1993.
Rehearing Denied October 7, 1993.
*891 Dan B. Zimmerman, Brett J. Prendergast, William D. Aaron, Jr., Kathy L. Torregano, New Orleans, for applicant.
Marcel Garsaud, Jr., Martin E. Landrieu, Gordon, Arata, McCollam & Duplantis, New Orleans, for respondent.
LEMMON, Justice[*].
This is a direct appeal from a judgment declaring unconstitutional an ordinance enacted by the City of New Orleans which purported to "clarify the application" of the preexisting amusement tax on the gross receipts of "admission charges" to certain amusements so as to impose the tax on the subscribers of cable television service. Also raised is the issue of whether Cox Cable New Orleans, Inc., a cable television franchisee, has the right to bring an action for refund of the tax paid by its subscribers and collected by Cox for payment to the City.

Facts
In 1990, the City adopted Ordinance No. 14300 M.C.S., which amended and reordained sections of Chapter 6 of the City Code pertaining to the "Amusement Tax." Chapter 6, as originally enacted in 1940, imposed a five percent tax on the gross receipts representing admission charges to a number of "described amusements," including a "production." The 1990 ordinance sought to clarify the applicability of the tax to cable television subscriptions by defining "production" to include "any audiovisual production, wherever shown, which is obtained by payment of a rental fee, subscription, or similar charge, including but not limited to cable or satellite TV subscriptions...."
As required by the ordinance, Cox collected the tax from its subscribers and remitted the funds to the Department of Finance, but notified the City that it was doing so under protest. Cox, in its own name, immediately filed two separate actions: (1) a declaratory judgment action seeking a declaration that *892 the ordinance is null and void, and (2) an action to obtain a refund of the taxes paid by Cox under protest. After the actions were consolidated, both Cox and the City filed motions for summary judgment addressing the validity of the ordinance. The City also filed an exception of no right of action asserting that Cox had no right to seek a refund of taxes paid by its subscribers.
The district court denied Cox's motion for summary judgment and overruled the City's exception of no right of action. The district court, however, granted the City's motion for summary judgment, ruling that the tax was a valid amusement tax on production, and dismissed Cox's declaratory judgment action.
The court of appeal, in an unpublished opinion, reversed the summary judgment granted by the trial court in favor of the City and rendered judgment in favor of Cox, declaring the ordinance unconstitutional, 601 So.2d 393, 601 So.2d 392. The court reasoned that the ordinance purporting to levy an amusement tax violated La. Const. art. VI, § 29 by levying what was in reality a municipal sales tax in excess of three percent that had not been authorized by the Legislature and approved by the voters.[1] The court further held that Cox had a right of action to seek refund of the taxes paid under protest and ordered a refund to Cox, to be distributed to the cable subscribers.
The City then applied to this court for certiorari. Because the judgment declaring an ordinance unconstitutional was reviewable under our appellate jurisdiction, this court granted the application and ordered the matter lodged as an appeal. 602 So.2d 12. See La. Const. art. V, § 5(D)(1).

Constitutionality of Ordinance
The City of New Orleans is entitled to levy, impose and collect any and all kinds of taxes which are not prohibited by or inconsistent with the Constitution. La.Rev.Stat. 33:361; Home Rule Charter, City of New Orleans, § 7-101(2); Radiofone, Inc. v. City of New Orleans, 616 So.2d 1243 (La.1993); Hildebrand v. City of New Orleans, 549 So.2d 1218 (La.1989), cert. denied, 494 U.S. 1028, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990); Acorn v. City of New Orleans, 377 So.2d 1206 (La.1979); See also Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11 (1941).
La. Const. art. VI, § 29 prohibits the imposition of any sales or use taxes by a municipality with a combined rate greater than three percent unless the tax is authorized by the Legislature and approved by a majority of the voters in an election held for that purpose. However, La. Const. art. VI, § 31, further provides that "any tax validly being levied by a political subdivision under prior legislative or constitutional authority on the effective date of this constitution is ratified."
The initial inquiry is whether the tax is a sales tax subject to the limitation of La. Const. art. VI, § 29(B). The nature of a tax is determined not by its title, but by its incidents, attributes and operational effect. The realities and substance of the tax must be examined, not its form. Reed v. City of New Orleans, 593 So.2d 368 (La.1992); City of New Orleans v. Scramuzza, 507 So.2d 215 (La.1987); City of New Orleans v. Christian, 229 La. 855, 87 So.2d 6 (1956).
In Reed v. City of New Orleans, 593 So.2d 368, 371 (La.1992), this court described the incidents and attributes of a sales tax:
A sales and use tax is a tax on the privilege of selling or purchasing and using *893 or consuming tangible personal property. It is a form of excise tax. Sales and use taxes may be general, applying to tangible personal property generally, or selective, applying to one specific commodity or group of commodities.... A sales and use tax is a consumption tax, applying to commodities intended for consumption and the burden of which falls on the consumer. (citations omitted).
Accordingly, this court held that the tobacco consumption privilege tax was not a valid special excise tax upon the privilege of consuming tobacco products, but was actually an unconstitutional sales tax. The tax had the incidents and attributes of a sales, use or consumption tax: the tax was due and payable at the time of the sale and purchase; the tax was levied on the purchaser and collected by the seller; the seller could not assume the tax and was required to collect it from the purchaser; and the tax was calculated as a percentage of the retail sales price. See also Circle Food Stores, Inc. v. City of New Orleans, 620 So.2d 281 (La.1993).[2]
The tax in the present case also has the essential characteristics of a sales, use or consumption tax. The tax is paid by the purchaser at the time cable service is purchased for the pertinent period, it is collected by the seller of the service, it cannot be assumed by the seller, and it is calculated by a percentage of the purchase price of cable service.[3]
Because the tax at issue is a sales tax which increased the combined sales tax above three percent and which was not authorized by the Legislature or approved by the electors, the levying of this sales tax violates the Constitution unless the tax can be sustained as a continuation of the amusement tax which was being levied validly under prior legislative authority on the effective date of the 1974 Constitution and which was therefore ratified by the Constitution.
The City contends that the 1990 tax was a modification of the amusement tax which was originally enacted in 1940 under the authority of La.Rev.Stat. 4:41 and was being validly levied on the effective date of the 1974 Constitution. In this respect the City argues that cable television was not enumerated in the 1940 ordinance because it did not then exist, but that the 1940 enactment intended to tax amusement productions such as cable television. Accordingly, the City argues, the 1990 ordinance did not enact a new tax, but rather modified the amusement tax chapter to reflect advances in technology and clarified the applicability to cable television operations of the 1940 tax that was ratified by the 1974 Constitution.
In 1940 La.Rev.Stat. 4:41 authorized municipalities of a certain size to levy an amusement tax to fund public charitable institutions, with the tax to be levied on "any theater, motion picture house, athletic contest, exhibition, pageant, production, demonstration, flower show, concert, musicale, recital, circus, freak show, minstrel show, lecture, address, night club, cabaret, dance, dance-hall, restaurant which provides either floor show, singing, dancing, or dancing facilities to patrons, excursion and sightseeing steamers which receive and discharge passengers in the same parish or municipality, aviation pleasure rides that take on and discharge passengers in the same parish or municipality, scenic railways, flying horses or merry-go-rounds, shooting galleries, and all games of skill and chance, as well as all mechanical devices operated for pleasure or skill where a fee is charged for admission or entrance or for the purpose of playing them, or where there is any charge whatever for them or in connection with them either directly or indirectly, or where admission is *894 had by a season ticket." (emphasis added). Under this authority the City in 1940 enacted an amusement tax which to a large extent tracked the language of La.Rev.Stat. 4:41. After several amendments not here pertinent, the 1990 ordinance added a definition of the word "production" in part as follows:
"Production" shall include, but not be limited to, in addition to those amusements specifically listed in Section 6.1, any entertainment provided on the premises by a disc jockey or similar entertainer and any audiovisual production, wherever shown, which is obtained by payment of a rental fee, subscription, or similar charge, including but not limited to cable or satellite TV subscriptions and rental of video tapes, video games, and computer games.
Because the word "production" had not been defined by the original ordinance or by any amendments prior to the effective date of the 1974 Constitution, the critical inquiry is whether the definition in the 1990 amendment falls within the contemplation of the term "production" used in the original ordinance and the enabling state statute.[4]
In interpreting statutes, the court must give the words of a law their generally prevailing meaning (except that words which are words of art or technical terms must be given their technical meaning).[5] La.Civ. Code art. 11. And when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La.Civ.Code art. 12. Furthermore, the meaning of words or phrases may be ascertained by the words and phrases with which they are associated. Words of general meaning should be applied only to such classes of things of the same general kind as those specifically mentioned. Rollins Environmental Serv. of La., Inc. v. Iberville Parish Police Jury, 371 So.2d 1127 (La.1979). The meaning of a word in a statute must be determined in the light of the statute as a whole. Reed v. Washington Parish Police Jury, 518 So.2d 1044 (La.1988).
The City contends that the inclusion of cable television today as a taxable amusement is a natural extension of the term "production," which has always been listed in the enabling statute and the ordinances enacting and amending the amusement tax. Cox argues, conversely, that the state enabling act does not extend, by definition or in any other fashion, the term "production" to anything beyond its contextual meaning and that the term "production" takes its meaning from its place in the text and a common sense reading. Cox points out that the substantial thrust of the portion of the statute containing the term "production" is directed to live entertainment or games of skill which are open *895 to the public and that the viewing of cable television in the privacy of one's own home can scarcely be considered as falling within the act. Cox concludes, therefore, that the term "production," as used in the statute, refers to such events as live theatrical, musical or special entertainment performances.
We agree with Cox's argument. The amusement tax authorized by the Legislature and enacted by the City prior to 1974 did not contemplate cable television services within its list of taxable amusements, but was directed mainly to live entertainment open to the public or to entertainment presented at a particular public facility with an admission charge for each opportunity to view the scheduled event or performance. Modifying the tax to include cable television, which may be viewed at any hour of the day in the privacy of a subscriber's home for a subscription price, is not a natural extension of the taxable amusements for which state law authorized the imposition of pre-1974 amusement taxes. Moreover, any ambiguity in a statute imposing a tax is construed in favor of the taxpayer and against the taxing authority. Goudchaux/Maison Blanche, Inc. v. Broussard, 590 So.2d 1159 (La.1991). We therefore conclude that the term "production," in the context of the list of taxable activities included in the City Code when the 1974 Constitution became effective, did not include cable television subscription service.
The City alternatively argues that cable television subscription service falls within the contemplation of "motion picture house" or "mechanical devices operated for pleasure or skill" which were included in the amusement tax chapter of the City Code when the 1974 Constitution became effective. We disagree with the City's strained contention that cable television is the current equivalent of the "motion picture house" of the 1940's. We conclude that cable television, transmitted continuously for a subscription fee into a person's private home, cannot reasonably be deemed to fall within the ambit of the term "motion picture house" in the context of its use in the 1940 statute.
The argument that cable television falls within the ambit of "mechanical devices operated for pleasure or skill where a fee is charged for admission or entrance or for the purpose of playing them" is even more remote. Although the City argues that cable television is a mechanical device which is available only upon the payment of a charge for admission or entrance or for the purpose of playing the device, one cannot reasonably say that this was the intention of the 1940 ordinance that enacted the amusement tax.
We therefore conclude that the 1990 ordinance was the enactment of a new tax, rather than a continuation of the amusement tax existing when the 1974 Constitution became effective. Accordingly, the tax is an unconstitutionally enacted sales tax.

Severability
Our conclusion that the amusement tax imposed by the City on cable television services is unconstitutional does not necessarily render the 1990 ordinance null in its entirety. The unconstitutionality of one portion of a law does not render the entire law unenforceable if the remaining portion is severable from the offending portion. State v. Russland Enterprises, 555 So.2d 1365 (La. 1990); State v. Azar, 539 So.2d 1222 (La.), cert. denied, 493 U.S. 823, 110 S.Ct. 82, 107 L.Ed.2d 48 (1989). The test for severability of a law which has been declared unconstitutional is whether the unconstitutional portion is so interrelated and connected with the constitutional portions that it cannot be separated without destroying the intention of the legislative body. State v. Azar, 539 So.2d 1222 (La.), cert. denied, 493 U.S. 823, 110 S.Ct. 82, 107 L.Ed.2d 48 (1989).
The only portion of the amusement tax questioned in this court is the applicability of the tax to the proceeds of charges for cable television subscriptions. The portion of the definition of production that applies to cable television subscriptions obviously can be deleted from the ordinance without rendering the entire ordinance null. We therefore strike only the offending portion of the ordinance and leave the remainder intact.

No Right of Action
An action can be brought only by a person having a real and actual interest which he asserts. La.Code Civ.Proc. art. 681. When the facts alleged in the petition *896 provide a remedy to someone, but the plaintiff who seeks the relief for himself is not the person in whose favor the law extends the remedy, the proper objection is an exception of no right of action. This exception raises the question whether the plaintiff has any interest in judicially enforcing the right asserted. La.Code Civ.Proc. art. 927(5); G.I. Joe Inc. v. Chevron U.S.A., Inc., 561 So.2d 62 (La.1990); Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972).
The City argues that if this court declares the ordinance unconstitutional, the cable television subscribers on whom the tax was imposed, rather than the cable television franchisee who merely collected the tax from the subscribers and delivered it to the City, have the sole right to bring an action for a refund of the tax.[6]
The City relies on this court's decision in Krauss Co. v. Develle, 236 La. 1072, 110 So.2d 104 (1959), to support its position that Cox has no legal interest in asserting an action for a refund of taxes paid by its customers. In Krauss, several merchants filed suit seeking to recover sales taxes collected by the merchants from their customers on merchandise delivered outside the parish of Orleans and paid under protest to the City. This court held that because the customers paid the taxes, they alone had the right to seek a refund, and that the merchants had no right to champion the cause of the consumers, especially when no consumer had appeared in the proceedings.
The claim in the present case is similar to the one asserted in Krauss. The taxing ordinance, as well as the state enabling statute, clearly state that the purchaser is to pay the tax and the tax "shall not be assumed by the seller." Cox collected the tax from the subscribers by adding the tax to the subscribers' cable television bill and remitted the taxes collected to the City. Although the ordinance rendered Cox ultimately responsible for payment of the tax, Cox in fact did not pay any portion of the tax itself. Moreover, no subscribers joined in the action, and Cox did not purport to appear as an authorized agent of the subscribers or to present a class action on behalf of all taxpayers. Therefore, Cox does not have a real and actual interest in judicially asserting an action for a refund of taxes paid by someone else. Only the cable television subscribers may bring an action against the City to collect taxes improperly imposed upon and paid by them.[7]

Decree
Accordingly, the judgment of the court of appeal declaring Ordinance No. 14300 M.C.S. unconstitutional is amended to strike only that portion purporting to include cable television service subscriptions within the definition of production. As amended, the judgment of the court of appeal in the declaratory judgment action is affirmed. The judgment of the court of appeal overruling the exception of no right of action in the suit for refund of the taxes paid under protest is reversed, the exception of no right of action is maintained, and the action for refund of the taxes is dismissed.
WATSON, J., concurs in part and dissents in part.
MARCUS and WATSON, JJ., would grant rehearing.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Dennis, J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] La. Const. art. VI, § 29 provides:

(A) Except as otherwise authorized in a home rule charter as provided for in Section 4 of this Article, the governing authority of any local governmental subdivision or school board may levy and collect a tax upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption, of tangible personal property and on sales of services as defined by law, if approved by a majority of the electors voting thereon in an election held for that purpose. The rate thereof, when combined with the rate of all other sales and use taxes, exclusive of state sales and use taxes, levied and collected within any local governmental subdivision, shall not exceed three percent.
(B) However, the legislature by general or by local or special law, may authorize the imposition of additional sales and use taxes by local governmental subdivisions or school boards, if approved by a majority of the electors voting thereon in an election held for that purpose.
[2] This court pointed out in Circle Food Stores that the criteria listed in Reed are not exclusive, but provide a guidepost for the analysis of the issue.
[3] La.Rev.Stat. 4:42 specifically provides that an amusement tax imposed by a municipality "shall not be assumed by the seller of the ticket and the seller shall collect the tax from the purchaser of the ticket for remittance to the municipality levying the tax." Likewise, the City Code provides that the amusement tax authorized by Chapter 6 "shall not be assumed by the seller of the ticket and it shall be mandatory on the seller to collect such tax from the purchaser of the ticket for remittance to the Department of Finance of the City." New Orleans, La.Code § 6.5 (1956).
[4] On the date the 1974 Constitution became effective, New Orleans, La.Code § 6.1 (1956) provided in pertinent part as follows:

There is hereby levied a tax for the purpose of providing funds for public and quasi-public charitable institutions in the City as authorized by the 1950 Revised Statutes of Louisiana, Sections 4:41 to 4:45. The tax shall be two percent on the Gross Receipts representing admission charges to any theatre or motion picture house, and five percent of the gross receipts representing admission charges to merry-go-rounds, whips, roller coasters, auto and flying scooters, carousels, scenic railways, ferris wheels, fun houses, mirrormazes, and any and all other amusement rides operated on public property. The tax shall be five percent of the gross receipts representing admission charges to the following described amusements when operated or offered on private or public property, to wit; any athletic contest, exhibition, pageant, production, demonstration, flower show, concert, musicale, recital, circus, freak show, minstrel show, lecture address, any night club, cabaret, dance, dance hall or restaurant which provides either floor shows, singing, dancing or dancing facilities, musical groups or `combos' or any other forms of entertainment whatsoever for its patrons; excursions and sightseeing steamers which receives and discharges passengers in the City, aviation pleasure rides that take on and discharge passengers in the City, scenic railways, flying horses or merry-go-round, shooting gallery and games of skill and chance as well as mechanical devices operated for pleasure or skill when (a) a fee is charged for admission or entrance or for the purpose of playing such game or device; or (b) there is any charge whatsoever therefor or in connection therewith either directly or indirectly; or (c) admission is made by season ticket. (emphasis added).
The term "production" was not specifically defined anywhere in the chapter.
[5] In construing a municipal ordinance, courts use the same guidelines as those used in construing a state statute.
[6] The City concedes that Cox had the right to bring the declaratory judgment action. The City solely questions Cox's right to bring the action to recover a refund of the taxes paid under protest.
[7] One purpose of the exception of no right of action is to protect a defendant from having to defend an action and possibly to pay a claim which actually belongs to a party other than the plaintiff. The claim in the present case actually belongs to the cable television subscribers. Inasmuch as Cox, since the beginning of this litigation, has continued to pay the taxes under protest and the City is holding the funds in escrow pending the outcome of this litigation, the subscribers may file a class action for recovery of the taxes, and individual subscribers can join in or opt out of the action as they choose.