935 So.2d 661 (2006)
In re Joseph C. MELANCON, III.
No. 2005-CA-1702.
Supreme Court of Louisiana.
July 10, 2006.
Rehearing Denied September 1, 2006.
*663 Charles C. Foti, Jr., Attorney General, Matthew R. Richards, Assistant Attorney General, for Applicant.
Benjamin E. Clayton, IV, for Appellee.
Michael B. Miller, Crowley, amicus curiae, for Connie Hitchcock, Harold Broussard, and Linda Hulin.
Joseph G. Albe, amicus curiae, for Joseph G. Albe.
WEIMER, J.
This matter is before us pursuant to this court's appellate jurisdiction over cases in which a law or ordinance has been declared unconstitutional by a lower court. La. Const. art. V, § 5(D). As our review of the record before us provides no basis for the district court's judgment declaring LSA-R.S. 23:1208(E) unconstitutional, we reverse that judgment and dismiss plaintiff's action without discussion of the substantive issues indicated therein.

PROCEDURAL BACKGROUND
On September 22, 2004, a petition for declaratory judgment and relief was filed on behalf of Joseph C. Melancon, III. The petition recites that plaintiff was an employee of Pulmonary Care Specialist, Inc. (PCS), who had filed a claim for workers' compensation benefits in District 6 of the Louisiana Office of Workers' Compensation Administration (OWCA). According to the petition, the employer responded by filing a claim against Melancon, citing an alleged violation of LSA-R.S. 23:1208.[1] *664 Melancon's petition states that proceedings in the two pending claims have been stayed until resolution of the declaratory judgment action.
In his petition, Melancon asserts the OWCA lacks subject matter jurisdiction to entertain Section 1208 fraud claims for several reasons. He further avers subsection 1208(E) violates the equal protection of law guarantees of the Louisiana Constitution. He prays for an injunction to issue to "all courts and the OWCA" *665 barring enforcement or implementation of that section's provisions.
Petitioner identified PCS, the OWCA, and Charles C. Foti, Jr., Attorney General for the State of Louisiana, as "interested parties" and requested service of the petition and notice of all hearings to issue.
On December 7, 2004, the district court for the Twenty-First Judicial District rendered judgment in the declaratory judgment action, declaring LSA-R.S. 23:1208(E) violates equal protection of law guarantees and is thus unconstitutional. The judgment permanently enjoined the OWCA, its judges and hearing officers and all persons and entities from hearing, trying, or adjudicating claims made for forfeiture of workers' compensation benefits. The judgment also enjoined the OWCA from adjudicating or applying the provisions of all sub-parts of LSA-R.S. 23:1208 on the ground that all claims pursuant to that statute must be brought in the district courts of this state.
The judgment states that "trial" of the matter was conducted on November 29, 2004. However, the court minutes for that day state that the "Rule for Declaratory Judgment and Relief" came up for hearing. (Emphasis supplied.) According to the minutes, the matter was heard and "with no opposition, the Court granted the Rule." There is no indication of any evidence being presented. The judgment states that counsel for Melancon was present on November 29, 2004, but the three "interested parties" identified in the petition did not have counsel of record enrolled on their behalf, nor had they filed answers or exceptions.
On January 10, 2005, the State of Louisiana, Department of Justice filed a motion to intervene on behalf of the OWCA.[2]

DISCUSSION
The scope of a declaratory judgment is provided in LSA-C.C.P. art. 1871, which states that "[c]ourts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. . . . The declaration shall have the force and effect of a final judgment or decree." Pursuant to LSA-C.C.P. art. 1872, a person whose legal relations are affected by a challenged statute has a right to file a petition for declaratory judgment seeking to have determined "any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." However, the filing of a petition does not automatically entitle a petitioner to declaratory judgment relief. "The court may refuse to render a declaratory judgment or decree where such judgment or decree, if rendered, would not terminate the uncertainty or controversy giving rise to the proceeding." LSA-C.C.P. art. 1876. According to LSA-C.C.P. art. 1880, "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."
The proceeding in the instant case, which resulted in a judgment declaring a statute unconstitutional and enjoining judicial action involving that statute, defies classification. A suit for declaratory judgment is an ordinary action, not a summary proceeding. See LSA-C.C.P. art. 851; Citizens *666 Organized for Sensible Taxation v. St. Landry Parish School Board, 528 So.2d 1048, 1053 (La.App. 3 Cir.1988). Petitioner has cited no authority for treating the scheduled "trial" as a "rule." Further, assuming merely for the sake of discussion that the petitioner's identification of interested parties was sufficient to warrant their qualification as defendants to the action, petitioner did not file for a preliminary default and no evidence was introduced to justify a confirmation of default upon presentation of a prima facie case. See generally, LSA-C.C.P. art. 1701, et seq.; for requirements of confirming a default against the state or a political subdivision, see LSA-C.C.P. art. 1704.
The closest analogy to the trial court proceeding in this matter may be a sua sponte declaration of unconstitutionality by a district court, which this court has found to be reversible error. In Istre v. Meche, 00-1316 (La.10/17/00), 770 So.2d 776, we held that the district court erred in declaring one section of a statute unconstitutional when issue had been joined only on a challenge to the constitutionality of another section of the statute. This court explained:

A judge should not declare a statute unconstitutional until the issue of its constitutionality has been presented because a judge's sua sponte declaration of unconstitutionality is a derogation of the strong presumption of constitutionality accorded legislative enactments. While there is no single procedure for assailing the constitutionality of a statute, it has long been held that the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized. . . . These procedural rules exist to afford interested parties sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute. This opportunity to fully brief and argue the issue provides the trial court with thoughtful and complete arguments relative to the issue of constitutionality and furnishes reviewing courts with an adequate record upon which to adjudge the constitutionality of the statute. [Citations omitted.] [Emphasis supplied.]
Istre, 00-1316 at 3-4, 770 So.2d at 779.
Although plaintiff raised the issue of the unconstitutionality of LSA-R.S. 23:1208(E) in his petition, issue was not joined at the time of the hearing. The wording of the judgment notes the lack of opposition. Thus, the trial court did not have the benefit of opposing arguments concerning the constitutionality of the challenged statute as specified in Istre.
The judgment on appeal (which, according to the court minutes, was prepared by counsel for petitioner) recites that it was rendered after consideration of "the pleadings, evidence of record and the arguments of counsel." However, plaintiff's petition is the only pleading of record; there was no evidence introduced; and the only counsel present was counsel for plaintiff. On appeal to this court, the only documents presented for review are the plaintiff's petition, the court minutes, and the trial court's judgment  a completely inadequate record.
An appellate court must render its judgment upon the record on appeal. LSA-C.C.P. art. 2164; Hazey v. McCown, 01-0929, p. 5 (La.App. 1 Cir. 5/10/02), 818 So.2d 932, 936. Arguments and pleadings are not evidence. Law Offices of Robert M. Becnel v. Ancale, 00-295, p. 6 (La.App. 5 Cir. 9/26/00), 769 So.2d 761, 766.
In oral argument to this court, counsel for petitioner admitted that he did not introduce any evidence at the scheduled hearing. However, he argues there was no necessity for evidence as the issue to be *667 determined by the trial court, the constitutionality of LSA-R.S. 23:1208, was purely a legal issue, not a factual one.
This argument ignores two factors: the prohibition of a sua sponte declaration of unconstitutionality of a statute, discussed previously, and a requirement of a showing by petitioner of standing to bring a declaratory action to challenge the constitutionality of the statute.
As the party who pled the issue of the unconstitutionality of LSA-R.S. 23:1208, plaintiff had the burden of introducing evidence of his entitlement to bring a declaratory judgment action, i.e., his standing to bring suit. See LSA-C.C.P. art. 1872 ("A person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute.")
More than a century ago this court noted: "The judiciary is silent until the presentation of some real right in conflict opens its lips." Romain v. Board of Sup'rs of Election, 49 La.Ann. 578, 579, 21 So. 731, 732 (1897).[3] Among the threshold requirements that must be satisfied before reaching a constitutional issue is the requirement that the party seeking a declaration of unconstitutionality have standing to raise a constitutional challenge. State v. Mercadel, 03-3015, pp. 7-8 (La.5/25/04), 874 So.2d 829, 834, citing Ring v. State, Department of Transportation and Development, 02-1367 (La.1/14/03), 835 So.2d 423, 428. The requirement of standing facilitates deference to the legislature; legislators are presumed to have weighed the relevant constitutional considerations in enacting legislation. Greater New Orleans Expressway Commission v. Olivier, 04-2147, p. 4 (La.1/19/05), 892 So.2d 570, 573. Legislative acts are presumed constitutional "until declared otherwise in proceedings brought contradictorily between interested persons." State v. Board of Supervisors, Louisiana State University & Agricultural & Mechanical College, 228 La. 951, 958-959, 84 So.2d 597, 600 (1955). "[A] litigant not asserting a substantial existing legal right is without standing in court." Id. This court has explained that a party has standing to argue that a statute violates the constitution only where the statute seriously affects the party's own rights. To have standing, a party must complain of a constitutional defect in the application of the statute to him or herself, not of a defect in its application to third parties in hypothetical situations. Greater New Orleans Expressway Commission, 04-2147 at 4, 892 So.2d at 573-574.
In an action for declaratory judgment, the requirement of a justicable issue[4] and the requirement of standing to bring the action[5] are separate and distinct *668 requirements. The distinction between these two concordant concepts may sometimes be blurred because "[s]tanding is a concept utilized to determine if a party is sufficiently affected so as to ensure that a justiciable controversy is presented to the court." (Emphasis supplied.) Guidry v. Dufrene, 96-0194, p. 4 (La.App. 1 Cir. 11/8/96), 687 So.2d 1044, 1046. The predicate requirement of standing is satisfied if it can be said that the plaintiff has an interest at stake in litigation which can be legally protected. Id.
The United States Supreme Court has explained that "standing" does not refer simply to a party's legal capacity to appear in court; rather, standing is gauged by the specific statutory or constitutional claims that the party presents and his or her relationship to such claims. In International Primate Protection League v. Administrators of Tulane Educational Fund, 500 U.S. 72, 77, 111 S.Ct. 1700, 1704, 114 L.Ed.2d 134 (1991), the Supreme Court held that plaintiff had standing to challenge the defendant's removal of its case to federal court because if defendant succeeded, plaintiff would lose its right to have its cause of action decided in the state courts. The Supreme Court reversed the court of appeal's finding that plaintiff lacked standing to challenge removal, rejecting defendant's argument that the court of appeal's finding of plaintiff's failure to satisfy the requirements of Article III of the United States Constitution for standing barred a finding of standing to challenge removal. See International Primate Protection League v. Administrators of the Tulane Educational Fund, 895 F.2d 1056, 1058-1059 (5th Cir.1990). This result illustrates that standing may exist for a portion of a party's claim but be lacking for another portion of the same claim if different rights are at issue.
"[T]he standing inquiry requires careful judicial examination of . . . whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." Allen v. Wright, 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984).
When the facts alleged in the petition provide a remedy to someone, but the plaintiff who seeks the relief for himself is not the person in whose favor the law extends the remedy, the petitioner lacks standing. Cox Cable New Orleans, Inc. v. City of New Orleans, 624 So.2d 890, 895-896 (La.1993) (In some circumstances in a declaratory judgment action, an exception of no right of action is appropriate to assert lack of standing.).
In the instant case, this court cannot perform the required judicial examination to determine whether plaintiff has standing to assert the unconstitutionality of LSA-R.S. 23:1208 because the facts he asserted in his petition are not supported by evidence. Plaintiff introduced no evidence or documents to prove that he was the employee of PCS; that he had filed a claim for workers' compensation benefits; that PCS had filed a counterclaim urging fraud pursuant to LSA-R.S. 23:1208; or that those claims were pending in the OWCA for District 6. Plaintiff did not even attempt to introduce the petition into evidence. *669 Without proof that plaintiff is a person whose legal relations are affected by the challenged statute, it cannot be judicially determined that the statute violates his constitutional right to equal protection under the law of the state of Louisiana.[6] Thus, the circumstances of this case show that plaintiff failed to prove that he had a right of action to obtain the judgment the trial court rendered. See Cox Cable New Orleans, Inc., 624 So.2d at 895-896. Lack of a right of action can be noticed by an appellate court on its own motion. LSA-C.C.P. art. 927.
Based on the lack of a proper evidentiary record, we conclude the district court erroneously declared the statute unconstitutional and erroneously issued an injunction prohibiting its use. Thus, we reverse the judgment and dismiss plaintiff's petition.
REVERSED; PETITION DISMISSED.
NOTES
[1] § 1208. Misrepresentations concerning benefit payments; penalty

A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
B. It shall be unlawful for any person, whether present or absent, directly or indirectly, to aid and abet an employer or claimant, or directly or indirectly, counsel an employer or claimant to willfully make a false statement or representation.
C. (1) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of ten thousand dollars or more, shall be imprisoned, with or without hard labor, for not more than ten years, or fined not more than ten thousand dollars, or both.
(2) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of two thousand five hundred dollars or more, but less than a value of ten thousand dollars shall be imprisoned, with or without hard labor, for not more than five years, or fined not more than five thousand dollars, or both.
(3) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of less than two thousand five hundred dollars, shall be imprisoned for not more than six months or fined not more than five hundred dollars, or both.
(4) Notwithstanding any provision of law to the contrary which defines "benefits claimed or payments obtained", for purposes of Subsection C of this Section, the definition of "benefits claimed or payments obtained" shall include the cost or value of indemnity benefits, and the cost or value of health care, medical case management, vocational rehabilitation, transportation expense, and the reasonable costs of investigation and litigation.
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
F. Whenever the employer reports an injury to the office pursuant to R.S. 23:1306, the employer and employee shall certify their compliance with this Chapter to the employer's insurer on a form prescribed by the director, which form shall include all of the following information:
(1) A summary of the fines and penalties for workers' compensation fraud.
(2) The names, addresses, phone numbers, and signatures of the employee and the employer.
(3) The fine or penalty that may be imposed for failure to report to the insurer as required by this Section.
G. Whenever an employee receives benefits pursuant to this Chapter for more than thirty days, the employee shall report his other earnings to his employer's insurer quarterly on a form prescribed by the director. Such form shall also include an additional signature of the employee evidencing the consent of the employee to the release of the employee's employment history and wage information. The consent form shall specifically inform the employee of the following:
(1) That the employee's employment history and wage information will be released and may be used by the employer or insurer in connection with the employee's workers' compensation claim and provided by the employer or insurer to vocational rehabilitation consultants selected by, or counsel or experts retained by, the employer or insurer in connection with any claim for benefits under this Chapter made by the employee and may be used in any proceedings in a court of law or before the office of workers' compensation administration.
(2) That the release is only for use in connection with the employee's workers' compensation claim.
H. (1) Whenever an employee fails to report to his employer's insurer as required by this Section within fourteen days of his receipt of the appropriate form, the employee's right to benefits as provided in this Chapter may be suspended. If otherwise eligible for benefits, the employee shall be entitled to all of the suspended benefits after the form has been provided to the insurer.
(2) Whenever an employer fails to report to its insurer as required by this Section, the employer may be subject to a penalty of five hundred dollars, payable to the insurer.
(3) The insurer may request a suspension of benefits or an assessment of a penalty for failure to report as provided in this Subsection by filing a form LDOL-WC-1008 with the director.
I. (1) No person acting gratuitously and without malice, fraudulent intent, or bad faith, shall be subject to civil liability for libel, slander, or any other relevant tort, and no civil cause of action of any nature shall exist against such person or entity by virtue of the filing of reports or furnishing of other information, either orally or in writing, relative to a violation by any person of the provisions of this Section.
(2) The grant of immunity provided by this Subsection shall not abrogate or modify in any way any statutory or other privilege or immunity otherwise enjoyed by such person or entity.
[2] The actions and/or inactions of the district court, the plaintiff, and/or the identified interested parties have resulted in a procedural quagmire that we will not address, in light of lack of a record adequate for appellate review of a declaratory judgment.
[3] In Romain, a candidate for congress nominated by a body of 100, not the Republican or the Democratic party, was denied representation at the polls; by the time his suit reached this court, the election had been held, and his right to office had been transferred to one of the political bodies of the federal government, making the question "purely an abstract one, which involve[d] no right between the contending litigants." Romain, 49 La.Ann. at 579, 21 So. at 731.
[4] See discussion of this requirement, Prator v. Caddo Parish, 04-0794, pp. 5-6 (La.12/1/04), 888 So.2d 812, 815-816.
[5] See explanation of standing in 26 C.J.S. Declaratory Judgments § 125 (2001), pp. 214-215:

Any person who has a real interest in, or is directly affected by, a statute or ordinance is entitled to obtain a judicial declaration as to the validity, construction, or operation of the legislation. However, in order to be entitled to maintain the action, the plaintiff must have a direct and present interest in the statute or ordinance and the effect of the declaration; it is insufficient that the plaintiff has a remote or indirect interest in the litigation. It must appear that the rights of the plaintiff will be affected by the legislation, in a manner distinct from that of every other citizen, inhabitant, and visitor in the municipality. The plaintiff must have an individual, special, protectible right which is in controversy and which will be lost or prejudiced unless the court intervenes to preserve it. [Footnotes omitted.]
[6] We note that in brief to this court, the intervener, Louisiana Department of Justice, argues the merits of the constitutional issue; the propriety of the injunctions issued; and the status of the "interested parties," i.e., whether they are actually defendants in this proceeding. We specifically pretermit discussion of any issue other than plaintiff's lack of standing, as the record before us does not warrant further use of judicial resources.