KIMBALL, Chief Justice.*
|2The matters of 2007-KK-1853 and 2007-KK-1870 involve the issue of whether the Orleans Parish Criminal District Court properly ordered the return of documents and copies thereof that were produced pursuant to a subpoena duces tecum pursuant to La. R.S. 15:41. For the reasons that follow, we find that because documents and copies of documents produced pursuant to a subpoena duces tecum are not “property seized” within the meaning of La. R.S. 15:41, the district court was without authority to order their return under the provisions of that statute.
The matter of 2008-CC-1066 involves the issue of whether the Attorney General’s investigative file into the circumstances surrounding several deaths at Tenet Health System Memorial Health Center following Hurricane Katrina is required to be disclosed at this time under the Public Records Act. We find that La. R.S. 44:3(A)(1) exempts from the required disclosure under the Public Records Act records held by the offices of the Attorney General and the District Attorney that pertain to any criminal litigation which can be reasonably anticipated until such litigation has been finally adjudicated or otherwise settled. After discussing the relevant inquiry to determine whether criminal litigation can be reasonably anticipated, we find the record in this case is insufficient to allow us to determine whether criminal litigation can be reasonably anticipated as provided in La. R.S. 44:3(A)(1). Accordingly, we remand this case to the trial court for it to conduct a contradictory hearing and determine whether criminal litigation can be reasonably anticipated in this case.
| ;iFacts and Procedural History
Beginning in' September 2005, after Hurricane Katrina struck the Louisiana coast, then-Louisiana Attorney General (“AG”) Charles Foti initiated several investigations into the conditions surrounding several deaths that occurred at hurricane-impacted healthcare facilities. During this period and pursuant to the requirements of law, Life Care Hospitals of New Orleans, LLC (“LifeCare”) self-reported the deaths of thirty-four men and women who died at Tenet Health System Memorial Medical Center, Inc. (“Tenet-Memorial”) in the immediate aftermath of Hurricane Katrina.[1] AG Foti thereafter began an investigation into the Tenet-Memorial deaths.
During the course of his investigation, AG Foti served La.C.Cr.P. art. 66 subpoenas and subpoenas duces tecum on numerous witnesses who were working at Memorial in the days following Hurricane Katrina, their corporate employers and various others. The AG also seized other documents and evidence through search warrants, and some documents were provided voluntarily by LifeCare and Tenet-Memorial. In sum, the AG’s investigative file ultimately contained several thousand pages of documents, including transcripts of witness interviews, documents obtained from Tenet-Memorial and LifeCare, other evidentiary records, information produced during the investigation, summary reports prepared by the AG, correspondence among the investigatory personnel, subpoenas and search warrants, expert re *977 ports, toxicology reports, police logs, photographs, and copies of press coverage. The AG’s investigation continued into 2006, and ultimately culminated in the arrest of three .medical professionals on July 17, 2006.
Following the arrests, AG Foti gave a complete copy of his investigative file [4to the Orleans Parish District Attorney’s Office (“DA”). The DA subsequently impaneled a special grand jury to consider the matter.[2] Two of the arrested healthcare professionals were then granted immunity in exchange for their testimony. On July 24, 2007, the special grand jury returned a “no true bill,” thereby refusing to indict the remaining healthcare professional. The DA then returned the copy of the AG’s investigative file to the AG.
Following the occurrences outlined above, two proceedings concerning the AG’s investigative file were initiated.
The Orleans Parish Criminal District Court Action[3]
On August 6, 2007, Tenet-Memorial filed a motion in Orleans Parish Criminal District Court for return of seized property pursuant to La. R.S. 15:41. In its motion, Tenet-Memorial sought to purge its documents from the AG’s investigative file by seeking the return of all property, including documents and any copies 'thereof, produced to the AG pursuant to subpoenas duces tecum and seized by the AG pursuant to a search warrant. The Cable News Network (“CNN”) attempted to |,^intervene, arguing that the return of copies would violate the Public Records Act, La. R.S. 44:1, et seq. The Orleans Parish Criminal District Court trial judge held a hearing on Tenet-Memorial’s motion on August 16, 2007, and thereafter entered the following order:
IT IS ORDERED that Hon. Charles C. Foti, Attorney General of the State of Louisiana and Hon. Eddie Jordan, District Attorney for the Parish of Orleans return the originals and all copies of materials produced as a result of a subpoena signed by this court, to the entities or organizations that produced material to the Attorney General’s office or the District Attorney’s office in this matter.
*978 IT IS FURTHER ORDERED that the Attorney General and the District Attorney shall have 30 days to take writs on this order. That period ends on September 15, 2007. Unless a stay of this order is granted by an Appellate Court, the Attorney General and the District Attorney shall return the property to any entity or organization on or before September 16, 2007. In the interim, the Attorney General, District Attorney and any other governmental entity of the State of Louisiana in possession of such material shall not release any original documents, records, other property, or copies thereof that were produced as a result of a subpoena signed by this court in this matter.
CNN sought supervisory writs and a stay from the court of appeal on September 7, 2007. That same day, the Louisiana Court of Appeal, Fourth Circuit, denied both the writ and the stay, finding: “Relator has no standing to seek supervisory review of the trial court’s ruling.” On September 12, 2007, the AG filed his own application seeking review by the court of appeal. Although the court found that the AG had the requisite standing, it denied the AG’s writ on the following day.
Thereafter, both CNN and the AG sought writs of certiorari from this court. We stayed the order of the trial court, granted certiorari, and consolidated the matters. In re: A Matter Under Investigation, 07-1853, 07-1870 (La.6/20/08), 984 So.2d 4.

\RThe 19th Judicial District Court for the Parish of East Baton Rouge Action

Following the return of the “no true bill” by the grand jury, CNN and the Times-Picayune, LLC (“Times-Picayune”) joined by others, submitted numerous public records requests to AG Foti requesting production of the investigative file. In response, the AG filed suit in the 19th Judicial District Court for the Parish of East Baton Rouge, seeking a declaratory judgment clarifying what portions, if any, of his investigative file were subject to release under the Louisiana Public Records Act. On the same day, several unidentified individuals alleging they are healthcare professionals who worked at Memorial Medical Center during and after Hurricane Katrina and appearing under the names of John and Jane Doe also filed a petition for declaratory judgment in the 19th Judicial District Court for the Parish of East Baton Rouge. These petitioners sought a declaration that the investigative files are not subject to disclosure under the Public Records Act. The Does named as defendants the Attorney General, the District Attorney of Orleans Parish, the Orleans Parish Coroner, Rose Agnes Sa-voie, CNN and the Times-Picayune, and “all other persons or entities who have made requests under the Louisiana Public Records Act.” In response, CNN and the Times-Picayune filed a cross-claim and motion for writ of mandamus and preliminary injunction seeking to compel the release of the investigative file. Subsequently, several interested parties were allowed to intervene in the suit. After the filing of the cross-claim, all parties agreed to proceed only in the Does’ case.
Several days after the Orleans Parish Criminal District Court rendered its order, the judge in the 19th Judicial District Court commenced hearings in the Does’ action. The AG filed under seal a complete copy of his investigative file, including an index, |7in the trial court.[4] After the hearings were completed, the trial court rendered judgment on September 19, 2007, finding that the majority of the investigative file was a public record, but *979 also identifying specific portions that were not subject to public release.[5] The trial court denied the motion for writ of mandamus and preliminary injunction. Finally, the trial court stayed its order to allow the litigants to seek appellate review.
The Does and various intervenors, including LifeCare, thereafter applied to the Court of Appeal, First Circuit, for supervisory writs. On April 18, 2008, in a 4-3 decision, a seven-judge panel of the court of appeal granted the writ applications in part and denied them in part, giving identical reasons for each application. The court of appeal denied the writs as to the trial court’s findings of jurisdiction and standing, and as to its order denying the motions for writ of mandamus and preliminary injunction. It granted the writs with respect to all other provisions of the trial court’s order and reversed. In reversing the remaining orders of the trial court, the court of appeal found La. R.S. 44:3(A), which exempts from the Public Records Act the disclosure of records or information held by the offices of the Attorney General, ¡ ^district attorneys, public health investigators and others when those records and information pertain to pending or reasonably anticipated criminal litigation until such litigation has been finally adjudicated or otherwise settled, applies to the file at issue. The court of appeal concluded materials in the investigative file were compiled, created and prepared to bring homicide charges against persons involved in the treatment of patients at Tenet-Memorial following Hurricane Katrina. The court of appeal found that because there is no prescriptive period for homicide charges, criminal' litigation was not finally adjudicated by the grand jury’s return of a no true bill. Accordingly, the court concluded, the documents and records at issue are exempted from disclosure under the Public Records Act by La. R.S. 44:3(A). Furthermore, the court of appeal found the investigative file at issue was prepared in connection with, and in preparation for, the eventual presentation to a grand jury. Thus, it concluded, its contents are shielded from disclosure by persons present at the grand jury meeting or having confidential access to information concerning the grand jury proceeding pursuant to La.C.Cr.P. art. 434.[6]
*980 CNN and the Times-Picayune subsequently applied to this court for writs of certiorari, which we granted on June 20, 2008. This matter was consolidated with the writs arising out of the Orleans Parish ' Criminal District Court action. Does v. 9Foti, 08-1066 (La.6/20/08), 984 So.2d 5.
Discussion

The Orleans Parish Criminal District Court Action (07-KK-1853 and 07-KK-1870)

In brief, both CNN and the AG argue that any documents obtained from Tenet-Memorial plainly fall within the definition of a public record under the Public Records Act, and, therefore, the AG has a legal duty to maintain copies of all such documents in his file. They further argue this duty overcomes Tenet-Memorial’s right to have said copies returned.[7] CNN and the AG also argue that a motion filed pursuant to La. R.S. 15:41 is by nature a civil action that can only be brought in a court of civil jurisdiction, and that, even if a motion for return of seized property can be brought in a criminal court, La. R.S. 15:41 is applicable only to property seized pursuant to a search warrant and specifically inapplicable to documents produced pursuant to a subpoena duces tecum. In opposition, Tenet-Memorial asserts that CNN lacks standing to intervene in this action, La. R.S. 15:41 is a criminal motion that can only be brought in a court of criminal jurisdiction, and La. R.S. 15:41 applies to both search warrants and subpoenas duces tecum.[8]
| inWe must first consider whether CNN has standing to intervene in Tenet-Memorial’s motion for return of property. Tenet-Memorial asserts that CNN was neither a party to the motion for return of property, nor was it made a subject of the court’s order. In addition, Tenet-Memorial notes that La. R.S. 15:41 does not contemplate actions by third parties other than those who claim an ownership interest in the seized property. Consequently, *981 Tenet-Memorial concludes that CNN lacks standing to challenge the trial court’s order. CNN counters that it has an interest in the motion for return of property because the records at issue qualify as public records and therefore implicate the public’s rights under the Public Records Act.
When addressing a litigant’s standing, we have found that the “predicate requirement of standing is satisfied if it can be said that the [litigant] has an interest at stake in litigation which can be legally protected.” In re: Melaneon, 05-1702, p. 9 (La.7/10/06), 935 So.2d 661, 668. Conversely, a litigant who is not asserting a substantial existing legal right is without standing in court. Melaneon, 05-1702 at p. 8, 935 So.2d at 667. In addition, that a party has the legal capacity to appear in court does not alone define standing; rather, standing is gauged also by the specific statutory or constitutional claims that the party presents and the party’s relationship to those claims. Melaneon, 05-1702 at p. 9, 935 So.2d at 668. The standing inquiry requires careful examination of whether a particular litigant is entitled to an adjudication of the particular claims it has asserted. Melancon, 05-1702 at p. 10, 935 So.2d at 668 (citing Allen v. Wright, 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984)).
In this case, La. R.S. 44:35 provides for the enforcement of the public’s rights under the Public Records Act:
A. Any person who has been denied the right to inspect or copy a record under the provisions of this Chapter, either |uby a final determination of the custodian or by the passage of five days ... from the date of his request without receiving a final determination in writing by the custodian, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney’s fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located.
La. R.S. 44:35. La. R.S. 44:35, by its plain language, provides that “any person who has been denied the right to inspect or copy a record” by the action of the “custodian” of those records a cause of action against the “custodian.” See Vourvoulias v. Movassaghi, 04-0262, p. 6 (La.App. 1 Cir. 2/11/05), 906 So.2d 461, 465 (“Only the person who requests to inspect or copy a public record and is denied that right belongs to the class of persons to whom the law grants the cause of action.”). Tenet-Memorial is not the custodian of the public records at issue in these consolidated eases, and is therefore not capable of denying CNN its right to inspect or copy a public record by filing a motion for return of its property. La. R.S. 44:31 and 44:36. Rather, the custodian of the public records at issue in these proceedings is the AG. La. R.S. 44:36. CNN’s right of action under the Public Records Act is limited to actions against the custodian of the public records. La. R.S. 44:35. Consequently, CNN’s action for enforcement of its rights under the Public Records Act is not by way of intervention against Tenet-Memorial in a motion for return of property filed in an Orleans Parish Criminal District Court because CNN has no substantial legal right in that motion. Rather, CNN’s action for enforcement of its rights under the Public Records Act is by way of suit against the AG, in the district court for the parish in which the office of the custodian is located. La. R.S. 44:35. In fact, in these consolidated cases, CNN exercised its rights under the Public Records Act when it filed suit against the AG in the District Court for the Parish of East Baton Rouge. For these reasons, CNN lacks statutory authority and is thus without standing to also |12exercise that right by intervening in an Orleans Parish Criminal *982 District Court action against an entity that is not the custodian of the public records.
CNN asserts, however, that it has a right, not only to access the public records, but also to ensure that they are not compromised by the Orleans Parish District Court’s order mandating the return of certain documents and copies thereof. The intent of CNN’s intervention in this case is thus not to inspect the public records, but rather to maintain what it considers to be public records. However, when the facts alleged provide a remedy to someone, but the litigant who seeks relief is not the person in whose favor the law extends the remedy, that litigant is without standing. Melancon, 05-1702 at p. 10, 935 So.2d at 668. In this case, the right and responsibility to maintain the public records is within the exclusive statutory authority of the AG. La. R.S. 44:36. Consequently, CNN cannot gain standing by claiming that it wishes to maintain the integrity of the public records on behalf of the AG.
In addition, when ruling on standing, it is both appropriate and necessary to look to the substantive issues to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated. Chicago Tribune Co. v. Mauffray, 08-522, pp. 7-8 (La.App. 3 Cir. 11/5/08), 996 So.2d 1273, 1279 (citing Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)). Here, CNN asserts a status that necessarily belongs to the AG: that of custodian of the alleged public records at issue in this case. However, CNN is without statutory authority to take up this mantle on behalf of the AG. As such, CNN also asserts that it has status as a person who has been denied the right to inspect or copy a public record. Nonetheless, CNN has asserted this status in an action for return of property. The claim sought to be adjudicated in this proceeding is that of the return of property. This claim has no logical nexus to CNN’s asserted status, which is that of a party who has been denied | inthe right to inspect or copy a public record. In order to be entitled to maintain its action, CNN must have had a direct and present interest in the motion for return of property; it is insufficient that CNN had a remote or indirect interest therein. Melancon, 05-1702 at p. 8 n. 5, 935 So.2d at 667 n. 5 (citing 26 C.J.S. § 125 (2001), pp. 241-15).
For these reasons, we find that CNN lacked standing to intervene in the Orleans Parish Criminal District Court proceeding, and we hereby dismiss CNN from that portion of this case.
Having determined that CNN lacked standing to intervene in Tenet-Memorial’s motion for return of property, we now address whether the Orleans Parish Criminal District Court possessed the requisite jurisdiction to entertain that motion. The AG asserts that a motion for return of property under La. R.S. 15:41 is a civil action over which the Criminal District Court for the Parish of Orleans had no jurisdiction. Tenet-Memorial, in turn, argues that only the Criminal District Court had jurisdiction over its motion for return of property, noting that it would be untenable for a party to petition the Orleans Civil District Court for relief from the orders of the Criminal District Court.
La. R.S. 15:41, entitled “Disposition of property seized in connection with criminal proceedings,” is found in Title 15 of the Revised Statutes goveiming “Criminal Procedure” within Code Title IV, entitled “Search Warrants”. La. R.S. 15:41(B) provides for the return of property seized in connection with a criminal proceeding so long as that property (1) “is not to be used as evidence or is no longer needed as evidence” and (2) no statute declares the property to be contraband. La. R.S. 15:41.
The rules of statutory construction provide that when a law is clear and l^unambiguous and its application will not *983 lead to absurd consequences, it must be applied as written. La. C.C. art. 9. Furthermore, when the words of a law are ambiguous, them meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12.
We find nothing within the plain language of La. R.S. 15:41 that requires Tenet-Memorial’s motion to be filed in a civil court. To the contrary, the fact that this article is found within the Revised Statutes governing criminal procedure strongly suggests that it applies to courts exercising criminal jurisdiction. In addition, logical considerations suggest such a finding. A civil court is an unlikely venue for determining the status of a criminal matter pending in another court or whether the evidence to be used therein is still needed.[9] Such action by the Orleans Civil District Court would put it at odds with the exclusive jurisdiction of the Orleans Criminal District Court. It would be bizarre indeed to require the clerk of the Orleans Criminal District Court to appear before the Orleans Civil District Court regarding orders issued by the Orleans Criminal District Court.
The AG cites three appellate cases in support of his conclusion that a La. R.S. 15:41 motion for return of property is a civil action: In the Interest of C.C., 03-762, p. 7 (La.App. 5 Cir. 12/9/03), 864 So.2d 663, 667; State v. Baynes, 96-0292, p. 6 n. 2 (La.App. 4 Cir. 7/31/96), 678 So.2d 959, 962 n. 2 (citing State v. Lamb, 26,257 (La.App. 2 Cir. 10/26/94); 645 So.2d 791); and State v. Mart, 96-1584, p. 5 (La.App. 1 Cir. 6/20/97), 697 So.2d 1055, 1058. In State v. Lamb, the police seized a significant amount of non-contraband cash from defendant Lamb incidental to his arrest, which he thereafter sought to have returned to him. Lamb, 26,257 at p. 1, 645 So.2d at 792. | ifiThe State argued that Lamb’s failure to appeal a prior judgment denying his previous motion for return of his property prevented him from now seeking its return. Lamb, 26,257 at p. 5, 645 So.2d at 794. The court of appeal stated, without citation, that “the instant matter is treated as civil by this court and is governed by the Code of Civil Procedure.” Id. Finding that the delay for taking his appeal had not started to run under the Code of Civil Procedure, the court of appeal allowed Lamb to contest the prior judgment denying his previous motion for return of property. Lamb, 26,257 at p. 7, 645 So.2d at 795. The appellate court’s assertion in Lamb constituted dicta, and was unsupported by law.
The Baynes court, also in dicta, made a similar finding, noting in a footnote that “an action for return of property, even if governed in part by criminal statutes, is by nature a civil action.” Baynes, 96-0292 at p. 6 n. 2, 678 So.2d at 962 n. 2. In support of this contention, the court of appeal cited State v. Lamb as its sole authority. Similarly, the Mart court, in arriving at an identical finding, cited only State v. Baynes as authority for its conclusion. Finally, in In the Interest of C.C., the appellate court, in determining that a motion seeking a return of property should be brought in a separate civil proceeding, cited this court’s decision in State v. Paster, 373 So.2d 170 (La.1979). However, a review of the Paster decision reveals that it did not address La. R.S. 15:41 at all, but rather found that a defendant’s liability for towing and storage fees was a civil action *984 pursuant to La.C.Cr.P art. 886 (1979) (nonpayment of fines and costs in criminal matters may be enforced in the same manner as money judgments in civil cases). Paster, 373 So.2d at 175-76.
We find none of the above-cited cases probative or even helpful in resolving the issues presently before us. Rather, the above-cited cases referenced no governing, applicable authority for their interpretations of La. R.S. 15:41, and several relied | ^solely on the unsubstantiated findings of their fellow appellate courts. Consequently, we question then correctness, and, to the extent they conflict with our decision today, they are overruled.
Finally, we note that La. R.S. 15:41 must be read in light of La.C.Cr.P. art. 167, which provides as follows:
When property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. If seized property is not to be used as evidence or is no longer needed as evidence, it shall be disposed of according to law, under the direction of the judge.
La.C.Cr.P. art. 167. The plain language of this article vests the judge presiding over a proceeding with the jurisdiction to order the return of property seized under a search warrant in connection with that proceeding. Because property seized pursuant to a search warrant is almost exclusively done so in connection with criminal proceedings and this provision is found in the Code of Criminal Procedure, we interpret this statute as allowing a criminal court judge to exercise the jurisdiction to order the return of property seized pursuant to a search warrant.
Given our mandate to read laws on the same subject matter in reference to each other under La. C.C. art. 13, and for the reasons set forth above, we find that a motion for return of property filed pursuant to La. R.S. 15:41 is part and parcel of a criminal proceeding, and is thus included within the jurisdiction of the criminal court presiding over or having presided over the criminal proceeding.
Having concluded that the Criminal District Court is a proper jurisdiction in which to bring this La. R.S. 15:41 motion, we now address the scope of such a motion. As noted above, La. R.S. 15:41, entitled “Disposition of property seized in connection with criminal proceedings,” is found in Title 15 of the Revised Statutes governing “Criminal Procedure.” Within Title 15, this statute is found in Chapter 1, disentitled “Code of Criminal Procedure Ancillaries,” and, within that chapter, is found within Code Title IV, entitled “Search Warrants.” Although the text of La. R.S. 15:41 does not refer by name to search warrants or the fruits thereof (i.e., property seized pursuant to a search warrant), it consistently and exclusively refers to “property seized” in connection with a criminal prosecution. As such, we must discern whether the copies in the possession of the AG constitute “property seized” in connection with a criminal prosecution as contemplated by La. R.S. 15:41.
As an initial matter, we do not address the status of any original documents, or copies thereof, seized by the AG pursuant to a search wai'rant. We find that we need not reach this issue given the limited language of the trial court’s order. The trial court’s order demanded the return of “the originals and all copies of materials produced as a result of a subpoena signed by this court, to the entities or organizations that produced material to the [AGJ’s office or the [DAj’s office in this matter.” (Emphasis added.) Later in its order, the trial court ordered the AG and the DA “not [to] release any original documents, records, other property, or copies thereof that were produced as a result of a subpoena signed by this court in this matter.” (Emphasis added.) Thus, it appears that *985 the trial court’s order was specifically limited to a return of the originals and copies of documents produced as a result of a subpoena only, and did not address or-order the return of the originals or the copies of documents seized pursuant to a search warrant. Therefore, we need not comment on whether a trial court, under the auspices of La. R.S. 15:41, may order the return of documents or copies of documents seized pursuant to a search warrant.
Having disposed of this initial issue, we now turn to whether documents produced pursuant to a subpoena duces tecum, and copies thereof, constitute “property seized” within the meaning of La. R.S. 15:41. This analysis necessarily | ^requires an inquiry into the constitutional origin of the subpoena duces tecum. At the outset, we note that there has been significant confusion regarding the precise relationship between subpoenas duces te-cum and what have been viewed as traditional searches and seizures under the Fourth Amendment. The United States Supreme Court noted in its seminal case on the matter, which involved the production of a corporation’s documents in response to a subpoena duces tecum:
The primary source of misconception concerning the Fourth Amendment’s function lies peidiaps in the identification of cases involving so-called ‘figurative’ or ‘constructive’ search with cases of actual search and seizure. Only in this analogical sense can any question related to search and seizure be thought to arise in situations which, like the present ones, involve only the validity of authorized judicial orders.
The confusion is due in part to the fact that this is the very kind of situation in which the decisions have moved with variant direction, although without actual conflict when all of the facts in each case are taken into account. Notwithstanding this, emphasis and tone at times are highly contrasting, with consequent overtones of doubt and confusion for validity of the statute or its application. The subject matter perhaps too often has been generative of heat rather than light, for the border along which the cases lie is one where government intrudes upon different areas of privacy and the history of such intrusions has brought forth some of the stoutest and most effective instances of resistance to excess of governmental authority.
Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 202, 66 S.Ct. 494, 502, 90 L.Ed. 614 (1946).
Notwithstanding this confusion, the Court plainly concluded that the “short answer” to Fourth Amendment objections regarding subpoenas duces tecum is that documents sought pursuant to a valid subpoena duces tecum, like those sought in the afore-quoted Oklahoma Press case, “present no question of actual search and seizure.... ” Oklahoma Press, 327 U.S. at 195, 66 S.Ct. at 498. See also United States v. Wallace & Tiernan Co., Inc., 336 U.S. 793, 796-97, 69 S.Ct. 824, 826, 93 L.Ed. 1042 (1949) (“Thus it cannot be thought that the form of the subpoena or the method of its enforcement | ^constitutes even a ‘constructive’ search or seizure barred as ‘unreasonable’ by the Fourth Amendment.”); United States v. Dionisio, 410 U.S. 1, 9, 17, 93 S.Ct. 764, 769, 773, 35 L.Ed.2d 67 (1973) (“It is clear that a subpoena to appear before a grand jury is not a ‘seizure’ in the Fourth Amendment sense, even though that summons may be inconvenient or burdensome,” and also noting that “the initial directive to appear is as intrusive if the witness is called simply to testify as it is if he is summoned to produce physical evidence.”); United States v. Mara, 410 U.S. 19, 21, 93 S.Ct. 774, 775, 35 L.Ed.2d 99 (1973) (“a grand jury subpoena is not a ‘seizure’ within the meaning of the Fourth *986 Amendment.”); In re Grand Jury Proceedings, 115 F.3d 1240, 1244 (1997) (finding that a subpoena duces tecum is not a search or seizure, the litigant’s argument to the contrary conflated a grand jury subpoena with a magistrate judge’s search warrant, and the instruments are different in nature and issued by different authorities). Rather, the Court opined, the only question raised by such subpoenas regards whether they have been “validly made.” Oklahoma Press, 327 U.S. at 195, 66 S.Ct. at 498.[10]
In distinguishing a valid subpoena duces tecum from a search and seizure, the Court noted that it is not necessary, as in the case of a search warrant, that a specific charge or complaint of violation of the law be pending or that the order be made pursuant to one. Oklahoma Press, 327 U.S. at 208-09, 66 S.Ct. at 505. Rather, it is enough that the investigation is lawfully authorized. Id. In addition, no officer or 12nOther person attempts to enter the premises of a person or corporation receiving a subpoena duces tecum, nor does any person attempt to search or seize their person or them records without their assent, other than pursuant to orders of a court authorized by law and made after adequate opportunity to present objections. Oklahoma Press, 327 U.S. at 195, 66 S.Ct. at 498.
It is this opportunity for objection and judicial intervention, in fact, that differentiates a subpoena duces tecum from a search or seizure. Persons from whom documents are subpoenaed are not required to submit to the subpoena’s demand if it is in any way unreasonable or overreaches its authority. Oklahoma Press, 327 U.S. at 217, 66 S.Ct. at 510. See also Donovan v. Lone Steer, Inc., 464 U.S. 408, 412, 104 S.Ct. 769, 772, 78 L.Ed.2d 567 (1984) (affirming Oklahoma Press, and finding that a subpoena is “scarcely the sort of governmental act which is forbidden by the Fourth Amendment.” The subpoena “itself did not authorize either entry or inspection of appellee’s premises; it merely directed appellee to produce relevant ... records at appellants’ regional office.... ”). Rather, to such an over-broad or unreasonable subpoena, such persons may make every appropriate defense supported by every safeguard of judicial restraint. Oklahoma Press, 327 U.S. at 217, 66 S.Ct. at 510; Donovan, 464 U.S. at 415, 104 S.Ct. at 773 (persons receiving subpoenas are provided protection and in no way left defenseless because they can question the reasonableness of the subpoena before the court before suffering any penalties for refusing to comply with it); Doe v. United States, 253 F.3d 256, 264 (6th Cir.2001) (noting that a primary distinction between subpoenas and searches and seizures is that, unlike the immediacy and intrusiveness of a search and seizure conducted pursuant to a warrant, the reasonableness of a subpoena’s command can *987 be contested in court before being |21 enforced.).[11]
This judicial intervention also alters the necessary burden for receiving a subpoena duces tecum. The probable cause requirement that is literally applicable in the case of search warrants is satisfied by the court’s determination that the investigation is authorized, the documents sought are relevant to the inquiry, and the request for production is reasonable. Oklahoma Press, 327 U.S. at 209, 66 S.Ct. at 506; Doe, 253 F.3d at 264 (“immediacy and intrusiveness associated with a search are not present” in a subpoena duces te-cum and thus the heightened requirement of probable cause is inapplicable); Becker v. Kroll, 494 F.3d 904, 916 (10th Cir.2007) (citing United States v. Bailey (in re Subpoena Duces Tecum), 228 F.3d 341, 347-49 (4th Cir.2000) for the proposition that probable cause is required for warrants but not for subpoenas because warrants are immediate and intrusive, whereas subpoenaed parties have an opportunity to challenge a subpoena before complying with it). Moreover, rather than a literal requirement to describe the place to be searched and the things to be seized, as is actually required for search warrants, a subpoena duces tecum need merely specify adequately, but not excessively, which documents must be produced for the purposes of the relevant inquiry. La.C.Cr.P. art. 732; Oklahoma Press, 327 U.S. at 209, 66 S.Ct. at 506. Therefore, while both subpoenas duces tecum l^and search warrants implicate a basic compromise between securing the public interests and guarding the private ones, the interests implicated by the use of a subpoena duces tecum “are not identical with those protected against invasion by actual search and seizure, nor are the threatened abuses the same.” Oklahoma Press, 327 U.S. at 213, 66 S.Ct. at 508.
While this court has yet to directly address the difference between subpoenas duces tecum and search warrants, we have recently spoken on the issue in a tangential manner. In State of Louisiana v. Lee, 05-2098, p. 17 (La.1/16/08), 976 So.2d 109, 123-24, this court addressed whether DNA collection could be compelled by use of a La.C.Cr.P. art. 66 AG’s/DA’s investigative subpoena duces tecum, and, in so doing, found that such a collection constituted a search under the Fourth Amendment requiring a valid search warrant supported by probable cause. In that case, the State asserted that a subpoena duces tecum issued by a judge pursuant to La.C.Cr.P. art. 66 is the “functional equivalent” of a search warrant. Lee, 05-2098 at p. 18, 976 So.2d at 124. We rejected this contention, noting that a subpoena duces tecum need not be supported by probable cause, as a search warrant must. Lee, 05-2098 at pp. 18-19, 976 So.2d at 124-25. We also found that, unlike a person served with a search warrant, a person receiving a subpoena duces tecum “may at any time seek protection by the court from hardship or abuse of process by moving to modify or quash the subpoena or order.” Lee, 05-2098 at p. 18, 976 So.2d at 124 n. 9. Our differenti *988 ation of warrants and subpoenas duces tecum and our rejection of the State’s argument that such subpoenas are the “functional equivalent” of warrants makes it clear that there is a concrete difference between the two and that the Fourth Amendment does not equate subpoenas duces tecum with seizures.
For these reasons, we find that documents and other things produced pursuant 123to a subpoena duces tecum are not “property seized” within the meaning of La. R.S. 15:41.[12] Therefore, because valid subpoenas duces tecum are not seizures, and documents produced pursuant to such subpoenas are not “property seized” within the meaning of La. R.S. 15:41, we find that the trial court was without authority under La. R.S. 15:41 to order the AG to return the documents, or their copies, produced by Tenet-Memorial pursuant to the AG’s subpoenas duces tecum. Consequently, the order of the trial court is reversed and set aside, and the case is remanded to the trial court for further proceedings consistent with this opinion. We note that we have determined only that La. R.S. 15:41 does not apply to documents produced pursuant to a subpoena duces tecum. While the legislature has not provided a specific procedure for the return of property produced pursuant to a subpoena duces tecum, the parties are not necessarily without recourse, and the trial court on remand may fashion a reasonable resolution if it so desires following the finality of the proceedings, including the expiration of all applicable appellate delays, initiated in the Nineteenth Judicial District Court for the Pai’ish of East Baton Rouge (08— CC-1066). See La.C.Cr.P. art. 3 (“Where no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the | ^provisions of this Code and other applicable statutory and constitutional provisions.”).

The 19th Judicial District Court for the Parish of East Baton Rouge Action (08-CC-1066)

As discussed above, this action arose following several public records requests for the AG’s investigative file that were submitted after the grand jury returned a “no true bill” in the underlying matter. In the action at issue, CNN and the Times Picayune assert they are entitled to all documents relating to the investigation of the deaths at Tenet-Memorial that occurred in the aftermath of Hurricane Katrina because those records are *989 public records under the Public Records Act. The Does respond that as a matter of law, the investigative file is not subject to disclosure under the Public Records Act because the file pertains to reasonably anticipated criminal litigation that has not been finally adjudicated or otherwise settled and is therefore exempt from the Act by La. R.S. 44:3. We must begin, then, by determining whether the investigative file constitutes a public record required to be disclosed upon request pursuant to the Public Records Act.
Article XII, sec. 3 of the Louisiana Constitution provides that “no person shall be denied the right to ... examine public documents, except in cases established by law.” The Louisiana Public Records Law is codified at La. R.S. 44:1, et seq. Pursuant to this law, any person of the age of majority may inspect, copy or reproduce, and any person may obtain a copy or a reproduction of, any public record “except as otherwise provided in this Chapter or as otherwise specifically provided by law.” La. R.S. 44:31. We have stated:
The right of the public to have access to the public records is a fundamental right, and is guaranteed by the [¿¿constitution. La. Const, art. 12, § 3. The provision of the constitution must be construed liberally in favor of free and unrestricted access to the records, and that access can be denied only ivhen a law, specifically and unequivocally, provides otherwise. Id. Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public’s right to see. To allow otherwise would be an improper and arbitrary restriction on the public’s constitutional rights.
Capital City Press v. East Baton Rouge Parish Metropolitan Council, 96-1979, p. 4 (La.7/1/97), 696 So.2d 562, 564 (quoting Title Research Corp. v. Rausch, 450 So.2d 933, 936 (La.1984)) (emphasis in original).
“Public records” are defined in La. R.S. 44:1 (A)(2)(a) as:
All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, ... except as otherwise provided in this Chapter or the Constitution of Louisiana.
Thus, under this broad definition, the investigative file at issue is a public record that any person may obtain a copy of unless the Public Records Act or another law specifically provides otherwise. La. R.S. 44:31.
In this court, the Does, various interve-nors, and the AG contend that the Public Records Act contains a specific exemption for the investigative file. La. R.S. 44:3 provides in part:
A. Nothing in this Chapter shall be construed to require | ¿(¡disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, *990 police departments, Department of Public Safety and Corrections, marshals, investigators, public health investigators, correctional agencies, communications districts, intelligence agencies, or publicly owned water districts of the state, which records are:
(1) Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled.... [13]
This court has recognized the provisions of La. R.S. 44:3 as containing a statutory exception to the Public Records Act. Beater v. Louisiana Supreme Court Cmte. on Bar Admissions, 00-1360, p. 8 (La.2/21/01), 779 So.2d 715, 719; Capital City Press, 96-1979 at p. 5, n. 2, 696 So.2d at 565 n. 2. We have also recognized, however, that this exception is temporary, denying access only until pending or reasonably anticipated criminal litigation has been finally adjudicated or otherwise settled. Landis v. Moreau, 00-1157, p. 5 (La.2/21/01), 779 So.2d 691, 695. Nevertheless, it applies to prevent the required public disclosure of investigative records as long as criminal litigation is pending or reasonably anticipated until that litigation has been|27finally adjudicated or otherwise settled.
The parties disagree as to the applicability of La. R.S. 44:3 to the facts of this case. As an initial matter, CNN asserts that only the Does and intervenors, and not the AG, have asserted this exemption and, therefore, it cannot be applied in this case. Part of the difficulty in addressing this issue stems from the fact that the investigating AG who participated in the trial court proceedings is no longer serving in that capacity. The current AG has clearly stated his intention to invoke the exemption, and argues in this court that the exemption is necessary to maintain the integrity of the file and to avoid compromising any future litigation arising from the investigation. The current AG further contends the case remains officially open. In documents filed in the trial court, the former AG requested a determination of what public records were subject to disclosure under the law.
Whether the investigative file is subject to disclosure implicates the provisions of La. R.S. 44:3. That statute plainly provides that disclosure of records pertaining to reasonably anticipated criminal litigation is not required under the Public Records Act until such litigation has been finally adjudicated or otherwise settled. Thus, if the exemption applies, the file is not required to be disclosed at this time *991 under the law and the AG’s question would be resolved. Consequently, we believe the applicability of the exemption was sufficiently invoked by the AG at the time of trial. Additionally, questions pertinent to a determination of the applicability of La. R.S. 44:3 were presented at trial, and the issue was before the trial court.
Turning to the applicability of the exemption provided by La. R.S. 44:3 to the facts of this case, we begin, as we must, with the language of the statute. Touchard v. Williams, 617 So.2d 885, 888 (La.1993) (“[T]he starting point for the interpretation of any statute is the language of the statute itself.”) (internal quotation | ¡^omitted). The Louisiana Civil Code mandates that when a law is clear and unambiguous and the application of the law does not lead to absurd consequences, the law must be applied as written without any further interpretation of the intent of the legislature. La. C.C. art. 9. Further, the words of a law must be given their generally prevailing meaning. La. C.C. art. 11. The plain language of the statute provides that nothing in the Public Records Act shall require disclosures of records held by the offices of the AG or the DA when the records pertain to pending or reasonably anticipated criminal litigation until the criminal litigation has been finally adjudicated or otherwise settled.
The provisions of the exemption apply to records, or the information contained therein, pertaining to pending or reasonably anticipated criminal litigation. The investigative file to which public access is sought was compiled and produced for the purpose of bringing and proving criminal charges arising from the circumstances surrounding the deaths following Hurricane Katrina at Tenet-Memorial. Everything in the file can be said to pertain to criminal litigation. Thus, if it can be said that criminal litigation is pending or reasonably anticipated in this ease, then the entire file is covered by the exemption and is not required to be disclosed under the Public Records Law at this time.[14]
The issue then becomes whether criminal litigation is pending or reasonably anticipated in this case. All parties agree there is no pending criminal litigation related to the deaths following Hurricane Katrina at TeneWVlemorial. Rather, the issue is whether criminal litigation can be reasonably anticipated. The generally understood meaning of the term reasonably anticipated is reasonably foreseen or contemplated. The term reasonably anticipated does not require a certainty or even 129a near certainty. Thus, criminal litigation can be said to be reasonably anticipated when it is reasonably foreseen or contemplated. The plain language of the statute does not require a finding that criminal litigation will be pursued or will almost certainly be pursued for the exemption to apply. Rather, the exemption applies if it is reasonably foreseen or contemplated, ie., if it is reasonably anticipated, that criminal litigation will be brought against some potential criminal defendant who was part of the investigation.
This court has previously established that the determination of whether a particular record falls within the exemption provided by La. R.S. 44:3(A)(1) must be made on a case-by-case basis. Cormier v. In re: Public Records Request of Giulio, 553 So.2d 806, 807 (La.1989). In making this determination in a specific case, the law “requires more than a judicial acceptance of an assertion of privilege by the prosecutor.” Cormier, 553 So.2d at 807; Conella v. Johnson, 345 So.2d 498, 501 (La.1977). Rather, a thoughtful determination must be made following a contradictory hearing *992 wherein there is an opportunity for cross-examination and presentation of evidence to contradict the claim of privilege. La. R.S. 44:3(C); Cormier, 553 So.2d at 807; Conella, 345 So.2d at 501.
Thus, the determination of whether criminal litigation is reasonably anticipated within the meaning of La. R.S. 44:3 must be made on a case-by-case basis in the context of a contradictory healing wherein the opportunity to present evidence and cross-examine witnesses is present. The determination must rest on more than an assertion by the prosecutorial authority that criminal litigation is or is not reasonably anticipated. Were the determination based solely on the testimony of the prosecutor, inconsistencies and caprice could enter the determination of whether the Public Records Act requires disclosure of the records at issue. The prosecutorial authority |socould change its mind, a new prosecutorial administration could enter office, new evidence could be discovered, a witness could come forward, or an absconded defendant could be found. The determination of whether criminal litigation is reasonably anticipated is subject to factors both within the prosecutorial authority’s discretion and outside of its control.
We therefore find that a court’s determination of whether criminal litigation is reasonably anticipated pursuant to La. R.S. 44:3(A)(1) must be guided by objective factors. These factors must serve the dual purpose of protecting the public’s right to know and safeguarding a prosecutorial authority’s ability to preserve the integrity of an investigatory file when criminal prosecution is reasonably anticipated, which is the purpose of the limited exemption provided by the statute at issue. The determination should take into account, among other things the court finds relevant: whether criminal litigation may still be initiated given the prescriptive period of the offense to be charged; the temporal and procedural posture of each case; whether criminal litigation has been finally adjudicated or otherwise settled; the assertion of the prosecutorial authority as to its intent or lack thereof to initiate criminal litigation; whether the prosecuto-rial authority has taken objective, positive and verifiable steps to preserve its ability to initiate criminal litigation, including, but not limited to, preserving evidence, maintaining contact with witnesses, and continuing an investigation; the time it would take to appropriately investigate and try an offense; the prosecutor’s inherent authority to determine whom, when and how he will prosecute, La.C.Cr.P. art. 61; the severity of the crime; the availability of witnesses, victims and defendants; the spoilation of evidence; the reasonable likelihood that a missing witness or an absconded defendant might be found; and the reasonable likelihood that additional witnesses might be willing to come forward with the |;upassage of time. As always, the burden of proving that the record is not subject to inspection, copying, or reproduction by a member of the public rests with the custodian. La. R.S. 44:31(3).
In La. R.S. 44:3(F), the legislature appears to have recognized that in some cases a significant period of time may exist during which criminal litigation is reasonably anticipated. That subsection provides:
F. Notwithstanding any other provision of law to the contrary, after a period of ten years has lapsed from the date of death of a person by other than natural causes, and upon approval by the district court having jurisdiction over any criminal prosecution which may result due to the death of such person, any prosecutive, investigative, and other law enforcement agency, or any other governmental agency in possession of inves *993 tigative files or evidence or potential evidence, or any other record, document, or item relating to said death shall, upon request, provide copies of all such files, records, and documents to immediate family members of the victim and shall provide unlimited access for any and all purposes to all such evidence, potential evidence, and other items to any member of the immediate family and to any person or persons whom any member of the immediate family has designated for such purposes....
La. R.S. 44:3(F). Because the legislature recognized the great length of time in which criminal litigation can be reasonably anticipated in some cases, it provided a means by which the information contained in the investigative file could be obtained after the passage of ten years by certain members of the public whose right to access the information predominates; namely, the immediately family of the decedent.
Upon our review of this case, we find the record is insufficient to allow us to make a meaningful determination of whether criminal litigation is reasonably anticipated for purposes of La. R.S. 44:3. This case arose in the context of a public records request, and the parties seek to access, or prevent access to, the investigative file at issue based on the applicability of the Public Records Law. La. R.S. 44:3 provides an exemption from the required disclosure of records pertaining to any |32criminal litigation which can be reasonably anticipated until such litigation has been finally adjudicated or settled. If it is determined that criminal litigation is reasonably anticipated pursuant to La. R.S. 44:3(A)(1) in this case, then the entire investigative file is not required to be disclosed pursuant to the Public Records Act and the inquiry is at an end. We thus deem it necessary to remand the case to the trial court with instructions that it conduct a new contradictory hearing to determine whether criminal litigation is reasonably anticipated pursuant to La. R.S. 44:3 as that statute is interpreted herein.[15] Because a finding that criminal litigation is reasonably anticipated would resolve the case, we decline to discuss any remaining issues as such discussion could be unnecessary to the resolution of this case at this time and could constitute mere dicta and overreaching by the court.
The record in this case is insufficient for us to determine whether criminal litigation is reasonably anticipated under La. R.S. 44:3(A)(1) as interpreted herein. Thus, the judgments of the lower courts are reversed and set aside and the matter is remanded to the trial court for further proceedings as explained in this opinion.
Decree
For the reasons set forth above, in the matters of 2007-KK-1853 and 2007-KK-1870 we find that CNN lacked standing to intervene in the Orleans Parish Criminal District Court proceeding, and we hereby dismiss CNN from that action. Furthermore, although we find that a La. R.S. 15:41 motion for return of seized property is properly brought under the jurisdiction of a criminal court, we also find that documents and copies produced pursuant to a subpoena duces tecum are not “property seized” within the meaning of La. R.S. 15:41. As such, the district court | ^herein was without authority under La. R.S. 15:41 to order their return. For these reasons, we reverse and set aside the judgment of the trial court, and remand this case to the trial court for further proceedings consistent with this opinion.
*994 For the reasons set forth above, in the matter of 2008-CC-1066 we find that La. R.S. 44:3(A)(1) exempts from the required disclosure under the Public Records Act records held by the offices of the Attorney General and the District Attorney that pertain to any criminal litigation which can be reasonably anticipated until such litigation has been finally adjudicated or otherwise settled. The record in this case is insufficient to determine whether criminal litigation can be reasonably anticipated as provided in La. R.S. 44:3(A)(1). Accordingly, we reverse and set aside the judgment of the lower courts and remand this case to the trial court for further proceedings consistent with this opinion.
2007-KK-1853-REVERSED AND SET ASIDE. CASE REMANDED TO THE CRIMINAL DISTRICT COURT FOR THE PARISH OF ORLEANS.
2007-KK-1870-REVERSED AND SET ASIDE. CASE REMANDED TO THE CRIMINAL DISTRICT COURT FOR THE PARISH OF ORLEANS.
2008-CC-1066-REVERSED AND SET ASIDE. CASE REMANDED TO THE 19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE.
VICTORY, J., concurs in part and dissents in part and assigns reasons.
KNOLL, J., dissents in part in nos. 07-KK-1853 and 1870 and concurs in the result in no 08-CC-1066, and assigns reasons.
WEIMER, J., concurs.

 Calogero, C.J., retired, recused. Chief Justice Calogero recused himself after oral argument and he has not participated in the deliberation of this case. Traylor, J., retired. Justice Traylor retired after oral argument and he has not participated in the deliberation of this case following his date of retirement, May 31, 2009.

. LifeCare is a healthcare provider that rented space from Tenet-Memorial and operated a separate acute care facility on the seventh floor of Tenet-Memorial Medical Center.

. The record suggests that the grand jury was impaneled in February 2007, but did not convene until May, and conducted its meetings through July 2007.

. It has come to this court’s attention that there exists a unique practice in some, if not all, of the divisions in the Orleans Parish Criminal District Court that mandates the filing of pleadings with the judge of each division rather than with the Clerk of Court for the Orleans Parish Criminal District Court. As a result, parties seeking to view the records have at times encountered difficulty identifying pleadings and filings, resulting in a decentralized and cumbersome system ripe for error and abuse. As noted in a letter dated September 11, 2008, from the Clerk of Court of the Orleans Parish Criminal District Court to this court, a search of the clerk's files revealed no records concerning this case.
The "record" filed with this court consists of an unpaginaled file compiled through the efforts of Judge Calvin Johnson, retired, supernumerary judge appointed by this court for the purpose of gathering documents and filings related to this matter. The file presented to this court was not prepared by the Clerk of Court for the Orleans Parish Criminal District Court as required by La.C.Cr.P. art. 917, nor does it bear any certification, as required by La.C.Cr.P. art. 918, that the file lodged with this court is indeed the complete record of the trial court proceedings. Nevertheless, C.Cr.P. art. 917 provides that "[f]ailure of the Clerk to prepare and lodge the record on appeal either correctly or timely shall not prejudice the appeal...." In any case, the lack of an official record in this case raises our concern, and we urge the Orleans Parish Criminal District Court to address this procedures such that the Clerk of Court can abide by the responsibilities entrusted to him and perform the duties legally required of him.

. The AG scanned the documents in his file, assigned them a title and stored them on digital media. The index is a printout of the titles of the scanned items.

. Specifically, the trial court found that: (1) patient medical records and LifeCare's personnel and internal investigative files were not public records subject to disclosure, (2) documents received or produced by the AG prior to the date the Orleans grand jury was impaneled is not grand jury secret under La. C.Cr.P. art. 434 and should be released with limited exceptions, (3) certain correspondence between the AG and DA sent while the grand jury was impaneled was covered by grand jury secrecy and should not be disclosed, and (4) any additional document in the AG’s file created or received after the grand jury was impaneled should be submitted to the trial court under seal for an in camera review to determine whether it communicated matters occurring at or directly connected to the grand jury meetings. The court further determined that the Does were not "confidential informants” pursuant to La. R.S. 44:3(B) and therefore did not have the right to keep their identities secret. The court ordered the AG to index the medical records contained in the file and deliver that index to the court under seal for further review. The trial court also ordered a variety of private information, including names, addresses, telephone numbers and social security numbers, to be redacted prior to any release. Finally, the trial court stayed the release of records produced pursuant to and in response to a search warrant or subpoena pending the final outcome of the proceeding initiated in the Criminal District Court for the Parish of Orleans.

. Guidry, X, dissented in part and concurred in part. Judge Guidry would have affirmed part of the trial court’s judgment, but would have vacated that portion of the trial court’s judgment regarding the distribution or release of the AG’s investigative file. Judge Guidry would have found that that portion of the trial court’s judgment was too vague and abstract, and was contrary to the spirit of the Public *980 Records Act. Instead, Judge Guidry would have remanded the matter to the trial court and ordered proceedings consistent with a list of enumerated guidelines.
McClendon, J., also dissented in part. While Judge McClendon believed there was a reasonable anticipation of criminal litigation, she would have found that the right to object to the disclosure of the file is limited to those entities listed in La. R.S. 44:3(A). Because plaintiffs are not members of this class, she would have found they lacked standing to assert the privilege arising from the statute. Consequently, Judge McClendon would have remanded the matter to the trial court for it to determine which documents were protected under grand jury secrecy and, further, whether the AG, DA or any other entity designated in La. R.S. 44:3 was asserting the exceptions provided therein.
Finally, Welch, J., also dissented in part and concurred in part. On the showing made, Judge Welch would have found no error in the trial court’s ruling.

. In brief to this court, the AG asserts that the original records were returned to Tenet-Memorial on Friday, September 14, 2007. Although the same analysis applies to both the originals and the copies for purposes of determining whether they are "property seized” within the meaning of La. R.S. ¡5:41, it appears only the copies are at issue at this point in the litigation.

. La. R.S. 15:41 provides, in pertinent part:
A. If there is a specific statute concerning the disposition of the seized property, the property shall be disposed of in accordance with the provisions thereof.
B. If there is no such specific statute, the following governs the disposition of property seized in connection with a criminal proceeding, which is not to be used as evidence or is no longer needed as evidence:
(1) The seized property shall be returned to the owner, unless a statute declares the property to be contraband, in which event the court shall order the property destroyed if the court determines that its destruction is in the public interest; otherwise, Paragraph (2) of this Section shall apply.

. La. R.S. 15:41 provides for the destruction of controlled dangerous substances and their paraphernalia. The AG's construction of this statute would lead to an absurd result whereby a civil court would be called to determine when such property, which may still need to be utilized by the criminal court in which an action is being prosecuted, should be destroyed.

. In arriving at its conclusion, the Court recognized that significant jurisprudence tending to establish a contrary conclusion existed. Oklahoma Press, 327 U.S. at 202, 66 S.Ct. at 502. “Without attempt to summarize or accurately distinguish all of the cases, the fair distillation,” in the Court’s opinion, was that "the Fourth [Amendment], if applicable, at most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,’ if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant.” Oklahoma Press, 327 U.S. at 208, 66 S.Ct. at 505. The Court further explained any contrary suggestions or implications as (I) dicta, (2) the result of the presence of an actual illegal search and seizure, the effects of which the State later sought to overcome by applying the more liberal doctrine applicable to subpoenas duces tecum, or (3) the result of the scope of the subpoena being too broad or indefinite such that the subpoena, in effect, approached the character of a general warrant. Oklahoma Press, 327 U.S. at 207, 66 S.Ct. at 504-05.

. See also Dionisio, 410 U.S. at 9, 93 S.Ct. at 769, in which the Court stated:
The compulsion exerted by a grand jury subpoena differs from the seizure effected by an arrest or even an investigative 'stop' in more than civic obligation. For, as Judge Friendly wrote for the Court of Appeals for the Second Circuit:
'The latter is abrupt, is effected with force or the threat of it and often in demeaning circumstances, and, in the case of arrest, results in a record involving social stigma. A subpoena is served in the same manner as other legal process; it involves no stigma whatever; if the time for appearance is inconvenient, this can generally be altered; and it remains at all times under the control and supervision of a court.’ United States v. Doe (Schwartz), 457 F.2d at 898.

. This is, of course, not to say that subpoenas duces tecum can not implicate the Fourth Amendment. To the contrary, while valid subpoenas duces tecum do not constitute seizures, invalid subpoenas, which are defined by the Supreme Court as those that are not sufficiently limited in scope, relevant in purpose, or specific in directive such that compliance will be unreasonably burdensome, Donovan, 464 U.S. at 416, 104 S.Ct. at 773, may constitute illegal searches and seizures. Thus, absent a valid search warrant, they may violate the Fourth Amendment. Dionisio, 410 U.S. at 11, 93 S.Ct. at 770 ("This is not to say that a grand jury subpoena is some talisman that dissolves all constitutional protections .... The Fourth Amendment provides protection against a grand jury subpoena duces tecum too sweeping in its terms 'to be regarded as reasonable.’ ”) (emphasis in original). Stated differently, while valid subpoenas duces tecum are not in and of themselves searches or seizures, invalid, overly burdensome or unreasonable subpoenas can constitute, in practical effect, searches and seizures under the Fourth Amendment. Id. However, because Tenet-Memorial has advanced no argument to this court to the effect that the subpoenas in this case were overly broad or burdensome, or unreasonable, we need not address their validity in this opinion. See also Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), overruled in pari on other grounds by Murphy v. Waterfront Com'n of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

. La. R.S. 44:3(A)(1) refers to an exception provided in subsection (F), which provides:
F. Notwithstanding any other provision of law to the contrary, after a period of ten years has lapsed from the date of death of a person by other than natural causes, and upon approval by the district court having jurisdiction over any criminal prosecution which may result due to the death of such person, any prosecutive, investigative, and other law enforcement agency, or any other governmental agency in possession of investigative files or evidence or potential evidence, or any other record, document, or item relating to said death shall, upon request, provide copies of all such files, records, and documents to immediate family members of the victim and shall provide unlimited access for any and all purposes to all such evidence, potential evidence, and other items to any member of the immediate family and to any person or persons whom any member of the immediate family has designated for such purposes. The access granted shall include but not be limited to the examination, inspection, photographing, copying, testing, making impressions, and the use in any court proceeding of and conducting forensic studies on such evidence, potential evidence, and other items. For the purposes of this Subsection, the term "immediate family” shall mean the surviving spouse, children, grandchildren, and siblings of the victim.

. This is, of course, subject to any exceptions contained within the statute itself.

. As noted above, we need not reach the issues of grand jury secrecy and the plaintiffs' privacy rights at this time, but the trial court is not prevented from reaching them if, on remand, it concludes that criminal litigation is not reasonably anticipated.