NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CA 0871

ROGER WEST & DARNELL WEST

VERSUS

CAROLYN & PAUL HORNSBY AND AMY JONES & JEFFREY JONES

*Judgment Rendered:* FEB 2 5 2021

********

Appealed from the 21st Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Docket # 159002

The Honorable Elizabeth P. Wolfe, Judge Presiding

********

| | |
|---|---|
| Alexis A. St. Amant<br>Baton Rouge, Louisiana | Counsel for Plaintiff<br>Roger West & Darnell West |
| Diana L. Tonagel<br>Denham Springs, Louisiana | Counsel for Defendant/Third Party<br>Plaintiff/Appellant<br>Carolyn & Paul Hornsby and Amy<br>Jones & Jeffrey Jones |
| Colt J. Fore<br>Denham Springs, Louisiana | Counsel for Third Party<br>Defendant/Appellee<br>Livingston Parish Gravity Drainage<br>District # 2 |

********

BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.

Guidry, J. Concurs in the result.

McClendon, J. Concurs in the result and assigns reasons.

**LANIER, J.**

This is an appeal from a summary judgment in favor of the appellee, Livingston Parish Gravity Drainage District # 2 (the District), which was filed by the appellants, Carolyn Hornsby, Paul Hornsby, Amy Jones, and Jeffrey Jones. For the following reasons, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On June 6, 2018, the Hornsbys and Joneses filed a reconventional demand against Darnell and Roger West, and a third party demand against the District.[1] In their third party demand, the Hornsbys and Joneses alleged that the District had performed public works on their private property in Livingston Parish (the Hornsby/Jones property) without first obtaining the authority of the Hornsbys or Joneses to do so, and without compensating the Hornsbys or Joneses for the work done on their property.[2]

---

[1] The reconventional and third party demands were in response to a petition for injunctive relief and damages filed on April 10, 2018 by the Wests against the Hornsbys and Joneses. Although the allegations in the Wests' petition are somewhat inconsistent with the allegations in the reconventional and third party demands of the Honrsbys and Joneses, the Wests alleged that their residential property in Livingston Parish, which they owned since 1964, was contiguous to the properties of the Hornsbys and the Joneses, and natural drainage had flowed from the West property to the Hornsby/Jones properties. Then, on or about 2004, the Wests alleged that the Hornsbys and Joneses changed the natural drainage pattern by excavating a ditch (Hornsby/Jones ditch) on their property, thereby creating an obstruction to the natural drainage for the West property.

The Wests further claimed that the "Parish Drainage Board" had attempted to correct the drainage problem by making cuts into the spoils levee, which had been created from soil displaced from the excavation of the Hornsby/Jones ditch, to allow surface drainage from the West property. The Wests alleged that the Hornsbys and Joneses deposited brush and tree limbs near the cuts, which trapped more soil and recreated the unnatural levee. The Wests therefore petitioned the trial court to enjoin the Hornsbys and Joneses from further blockage of drainage from the West property and to restore the natural drainage which existed prior to the excavating of the Hornsby/Jones ditch.

[2] Amy Jones is the daughter of the Hornsbys, and Jeffrey Jones is their son-in-law. The Joneses live on a parcel of land that was donated to them on February 28, 2018 by Mrs. Hornsby. The land donated to the Joneses lies completely within the original tract owned by the Hornsbys, bounded on the east and west by the Hornsbys, and bounded on the north by the Wests.

More specifically, the Hornsbys and Joneses claim that when the Hornsbys' residence was built on or about 1966, a small drainage ditch was dug near the property line shared with the West property, but was located on the Hornsby/Jones property (the Hornsby/Jones ditch). When the Joneses built their home on the Hornsby/Jones property in 2001, the ditch was extended by several feet to allow drainage for the Joneses. The Hornsbys and Joneses claim that the extension was approved by the Parish of Livingston. They further claim that the Wests did not have any ditches, natural or man-made, on their property prior to 2017. The Hornsbys and Joneses alleged that from 2017 until the time of the filing of the third party demand, the Wests had changed the natural drainage patterns when they dug a number of ditches and channels throughout their undeveloped, low-lying land, which is used as a cow pasture. Some of these new ditches allegedly drain onto the Hornsby/Jones property, which is higher than the West property, by tunneling under the fence along the property line and going into the Hornsby/Jones property. The Hornsbys and Jonses claim this intentional redirection of drainage by the Wests has caused erosion and accumulation of water, flooding, damage to trees and plants, and loss of use and enjoyment of the Hornsby/Jones property.

The Hornsbys and Joneses further alleged that the Wests had requested on or about September 2016 that the District dig these new ditches and channels, without the permission or knowledge of the Hornsbys or Joneses. The Hornsbys and Joneses denied that they had created any levees on their property to block drainage of the West property, and that neither the Wests nor the District have maintained the ditches cut directly into the Hornsby/Jones property, causing further erosion and damage. The Hornsbys and Joneses thereby seek damages from the District for their trespass onto, damage, and destruction of their property without their permission and without the District providing compensation.

On August 2, 2019, the District filed a motion for summary judgment against the Hornsbys and Joneses. Through its exhibits and memorandum, the District argued that a natural drainage servitude existed between the two properties, and that the District has routinely maintained that servitude over the past decade. The District claimed that the Wests, Hornsbys, and Joneses were aware of its maintenance of the servitude. The District further argued that the District's actions over which the Hornsbys and the Joneses complain actually improved drainage in the area, and the District's actions were consistent with the purposes for which it was created. The District claims its authority to perform drainage work on private property derives from La. R.S. 38:113,[3] which gives the District control over the drainage servitude. The District further claimed that at no time did it deposit dirt on either the West or Hornsby/Jones properties to adversely affect drainage for the Hornsby/Jones property.

A hearing on the motion for summary judgment was held on January 21, 2020. In a judgment signed March 9, 2020, the trial court granted summary judgment to the District and dismissed the third party demand of the Hornsbys and Joneses with prejudice. The trial court's reasons stated that the District maintained a drainage servitude pursuant to La. R.S. 38:113, that no genuine issue of material fact existed, and the District was entitled to judgment as a matter of law.[4] The Horsbys and Joneses have appealed this judgment.

---

[3] "The various levee and drainage districts shall have control over all public drainage channels or outfall canals within the limits of their districts which are selected by the district, and for a space of one hundred feet on both sides of the banks of such channels or outfall canals, and one hundred feet continuing outward from the mouth of such channels or outfall canals, whether the drainage channels or outfall canals have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels or outfall canals, and may adopt rules and regulations for preserving the efficiency of the drainage channels or outfall canals."

[4] The judgment erroneously notes that the servitude was established under "La. R.S. 31:113" instead of La. R.S. 38:113.

## ASSIGNMENTS OF ERROR

The Hornsbys and Joneses have alleged the following assignments of error:

1. The trial court erred in granting the motion for summary judgment where the District failed to carry its burden of proving that there were no material issues of fact for trial.

2. The trial court erred in granting the motion for summary judgment where the District failed to carry its burden of proving that it was entitled to judgment as a matter of law.

3. The trial court erred in considering the District's inadmissible evidence and failing to consider the Hornsbys' evidence.

4. The trial court erred in its application of the law, La. R.S. 38:113, finding a statutory servitude in favor of the District, which does not apply to the Hornsby/Jones property or the Hornsby/Jones ditch situated thereon, that was never part of any drainage channels or outfall canals, and served only their private purposes.

5. The trial court erred in dismissing the Hornsbys' and Joneses' damage and inverse condemnation claims regardless of the erroneous finding of a servitude, as La. 38:113 does not absolve the District of liability as a matter of law.

## DISCUSSION

*Evidentiary rulings*

Initially we must address the Hornsby's and Joneses' assignment of error which claims the trial court erred in considering the District's inadmissible evidence and failing to consider the evidence of the Hornsbys and Joneses. In their opposition to the District's motion for summary judgment, the Hornsbys and Joneses moved to strike exhibits A through E submitted with the motion for summary judgment. Exhibits A through C are property maps and descriptions that the Hornsbys and Joneses claim were not authenticated. Exhibits D and E are affidavits that the Hornsbys and Joneses claim are neither the personal knowledge of the affiants nor relevant.

The trial court stated at the hearing on the motion for summary judgment that a memorandum in opposition is not the proper vehicle by which to bring a

motion to strike, as per La. C.C.P. art. 966(D)(2).[5] Comment (k) of the Revision Comments 2015 to Article 966 states that this "provision changes prior law by specifically removing the motion to strike as a means of raising an objection to a document offered by an adverse party in support of or in opposition to a motion for summary judgment and does not allow a party to file that motion." The intent of La. C.C.P. art. 966(D)(2) was to make it mandatory that any objection to a document filed in support of or in opposition to a motion for summary judgment must be objected to in a timely filed opposition or reply memorandum and not in a "motion to strike" or other pleadings. *Ramus v. KCJS Trucking, LLC*, 2019-0039 (La. App. 1 Cir. 9/27/19), 287 So.3d 728, 733.

Although the Hornsbys and Joneses refer to their objections to the exhibits as a "motion to strike," the objection is made in their timely filed opposition to the Districts' motion for summary judgment. The Hornsbys and Joneses did not file a separate motion to strike to raise these objections. Despite their description of their objections, the Hornsbys and Joneses followed the correct procedure of La. C.C.P. art. 966(D)(2). We therefore reverse that evidentiary ruling of the trial court and now review the admissibility of the evidence.

Exhibit A, as offered by the District, contained an aerial photograph of the disputed property taken by Atlas Geo-Portal Maps, and the act of donation of property from Mrs. Hornsby to the Joneses dated February 28, 2018. At the hearing, the District on its own motion removed the photograph from Exhibit A and only submitted the act of donation, which the trial court admitted as evidence. With the act of donation is a certification by the Livingston Parish Clerk of Court

---

[5] "The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider."

6

that "the attached document was filed for registry and recorded in the Clerk of Court's office for Livingston Parish, Louisiana." The certification was signed by a deputy clerk, and the recordation date is March 9, 2018.

Exhibits B and C also contained aerial photographs by Atlas Geo-Portal Maps, which the trial court ruled as inadmissible; however, Exhibit B also contained an act of cash sale which conveyed the Hornsby/Jones property to the Hornsbys, and Exhibit C contained an act of cash sale which conveyed the West property to the Wests. Each act is file stamped and recorded by the Livingston Parish Clerk of Court. The trial court admitted the acts into evidence.

A statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove truth of the matter asserted, is hearsay and inadmissible as evidence. La. C.E. arts. 801 and 802; *Buckbee v. United Gas Pipe Line Co. Inc.*, 561 So.2d 76, 80 n. 4 (La. 1990). Records, reports, statements, or data compilations, in any form, of a public office or agency setting forth its regularly conducted and regularly recorded activities pursuant to its duty imposed by law are an exception to the hearsay rule and are admissible. La. C.E. art. 803(8)(a)(i,ii). We therefore find no error in the trial court's admission of Exhibits A through C into evidence.

Exhibit D is the sworn affidavit of Carl Chutz, who stated he was the manager of the District from 2002 to 2019. He further stated that from approximately 2014 to 2019, the District maintained the natural drainage ditch between the West and Hornsby/Jones properties. Exhibit E is the sworn affidavit of Toby Fruge, who stated he was a consulting engineer for the District, was familiar with the West and Hornsby/Jones properties and the ditch that runs between them, and stated the natural drainage directions of each property. Each affidavit is notarized and signed by the affiant.

7

The Hornsbys and Joneses objected to Mr. Chutz's affidavit as being inaccurate, since in the affidavit he stated that the ditch is between both properties, but in his deposition indicates the ditch was entirely on the Hornsby/Jones property. The Hornsbys and Joneses argued that they never permitted Mr. Chutz to maintain the ditch on their property, so Mr. Chutz's statement that he maintained the ditch on behalf of the District is irrelevant. The trial court admitted Exhibit D into evidence over the Hornsbys' and Joneses' objection.

Similarly, the Hornsbys and Joneses argued that Exhibit E, Mr. Fruge's affidavit, was inaccurate, unreliable, and not based on personal knowledge. In his deposition, Mr. Fruge testified that he had never physically gone to either the West or the Hornsby/Jones property, but instead analyzed the drainage of the two properties with a computer program. The Hornsbys and Joneses claimed Mr. Fruge's affidavit and testimony were based on speculation. The trial court admitted Exhibit E into evidence.

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). With respect to Exhibit D, Mr. Chutz stated an observation he had made from his personal knowledge of the drainage ditch. Whether his statement is accurate is not for the trial court to decide because the trial court cannot make credibility determinations on a motion for summary judgment. The trial court must assume that all of the affiants are credible. See *Independent Fire Ins. Co. v. Sunbeam Corp.*, 1999-2181 (La. 2/29/00), 755 So.2d 226, 236 (rehearing denied 4/7/00). As to its relevancy, the affidavit centers around the maintenance of the natural drainage ditch which is at the center of the litigation. La. C.E. art. 401. Questions of relevancy and admissibility of evidence are discretion calls for the trial court, and such determinations regarding relevancy and

admissibility should not be overturned absent a clear abuse of discretion. *Darby v. Sentry Ins. Auto. Mut. Co.*, 2007-0407 (La. App. 1 Cir. 3/23/07), 960 So.2d 226, 234, writ denied, 2007-0638 (La. 3/28/07), 953 So.2d 59. We do not find the trial court abused its discretion in admitting Exhibit D.

As for Exhibit E, Mr. Fruge was not qualified as an expert, although he is an engineer. He merely states he is familiar with the West and Hornsby/Jones properties and the ditch, but does not state how he is familiar with them. He then makes what are conclusory statements about drainage around the properties without indicating how he would know such information. Although the affidavit does not contain an expert opinion, affidavits with conclusory allegations of fact which are devoid of specific facts do not satisfy the requirements that a summary judgment be made on personal knowledge. See *Ritchey v. State Farm Mutual Automotive Insurance Company*, 2017-0233 (La. App. 1 Cir. 9/15/17), 228 So.3d 272, 279; see also *Midland Funding, LLC v. Trahan*, 2012-0562 (La. App. 5 Cir. 2/21/13), 110 So.3d 1154, 1157.

Therefore, we find the trial court erred in admitting Exhibit E into evidence, and we hereby strike that exhibit from the record.

In opposition to the District's motion, the Hornsbys and Joneses submitted into evidence excerpts from the depositions of Mr. Chutz, Mr. Fruge, and Mr. West. Although the Hornsbys and Joneses allege the trial court did not consider this evidence, nothing in the record supports this assertion. In fact, the judgment states that the trial court considered "the pleadings, evidence offered, and argument of counsel." The allegation that the trial court did not consider the evidence submitted by the Hornsbys and Joneses in opposition of the District's motion for summary judgment is therefore meritless.

*Motion for Summary Judgment*

Summary judgment must be rendered in the District's favor, as the movers, if the pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions show that there is no genuine issue as to material fact and that the District is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3) and (4); *Pottinger v. Price*, 2019-0183 (La. App. 1 Cir. 10/23/19), 289 So.3d 1047, 1054.

Mr. Chutz stated in his affidavit that he maintained a "natural drainage ditch located between and running through the West and Hornsby/Jones property." The map of the Hornsby/Jones property shows a ditch running along the northern border of the property, which would be the border with the West property, and the ditch is located entirely within the Hornsby/Jones property. Mr. West testified in his deposition that he had seen the District perform maintenance on the ditch several times, and he characterized the ditch as being between his property and the Hornsby/Jones property. Mr. Hornsby testified in his deposition that he had given the District permission to only perform maintenance on his property, but not to add slips to the ditch. In Mrs. Hornsby's deposition, she testified that the ditch in question was on her property. It is clear to us that in Mr. Chutz's affidavit, his use of the word "between" was to simply give a general description of where the ditch was located, but that he did in fact know that the ditch was located on the Hornsby/Jones property. This fact is further corroborated by the map of the Hornsby/Jones property.

According to Mr. West's deposition, on September 19, 2016, he had attended a District board meeting to discuss addressing drainage issues with his property, and at some point prior to this litigation, Mr. West and his attorney met with Mr. Hornsby and the Joneses in an attempt to resolve their disputes over the drainage problems with the Hornsby/Jones ditch. Mr. West claimed that work

done on the ditch from the Hornsby/Jones property left dirt deposits on the West property and created drainage problems.

Mr. Hornsby stated in his deposition that prior to donating a portion of the Hornsby property to the Joneses, Mrs. Hornsby had sole authority over the entire Hornsby/Jones property. Notice of the donation was sent to the District. He further claimed that he had never granted the District permission to make any alterations outside of maintenance to the Hornsby/Jones ditch. In contrast, Mrs. Hornsby stated in her deposition that Mr. Hornsby had authority to permit work on the Hornsby/Jones property. However, she was unaware of the District being given permission to enter the Hornsby/Jones property for any reason other than to clean the Hornsby/Jones ditch.

Mr. Jones testified in his deposition that prior to owning the Jones property, Mrs. Hornsby had authority over the entire Hornsby/Jones property. He was unaware if permission had ever been given to the District to enter the Hornsby/Jones property for any reason, but stated that after he and his wife gained ownership of the Jones property, only they had authority over their land, and not even the Hornsbys could have given permission to anyone to go onto the Jones property. Mr. Jones had witnessed Mr. West mark places for slips to be dug toward the Hornsby/Jones ditch, but he did not witness who actually dug the slips.

Mrs. Jones testified in her deposition that her mother had donated approximately 1.5 acres of the Hornsby property to her on February 2, 2001, and it was on this land that she and Mr. Jones built their home. The record is not clear as to where this 1.5 acre parcel is located with respect to the Hornsby/Jones ditch, but Mrs. Hornsby donated to the Joneses an additional 3.6 acres on February 28, 2018. Mrs. Jones testified that she and Mr. Jones had sole authority over their property once it had been donated to them, but prior to that time, Mrs. Hornsby had sole authority over the entire Hornsby/Jones property. She further stated that an

11

agreement had been reached between the Wests, Hornsbys, and Joneses concerning the drainage of the Hornsby/Jones ditch in 2018, but the Wests broke that agreement by spreading dirt behind the Joneses' house and digging ditches to connect to the slips that were behind the Joneses' home. These actions by the Wests caused poor drainage behind the Joneses' house, resulting in the present litigation.

In Mr. Chutz's deposition, he testified that while he was allowed to maintain ditches, he was not allowed to dig new ones. The ditch he did maintain was "from the Hornsby side; never got to the West property," but he did so with Mr. Hornsby's permission. Mr. Chutz also characterized the ditch as "the Hornsby ditch," based on where the fence line was located, and that no part of the ditch was on the West property. Mr. Chutz stated he was not familiar with a sewerage runoff ditch that would have been dug in the 1960s for the Hornsbys and later extended for the Joneses.

Mr. Chutz also testified that Mr. West and Mr. Hornsby each attended a District board meeting on separate occasions. At one meeting, Mr. West requested that he wanted water from his property to drain into the Hornsby/Jones ditch. At another meeting, Mr. Hornsby reached an agreement with the District that some slips could be cut into his ditch to solve Mr. West's drainage problem. Some time after these slips were cut, Mr. Chutz witnessed Mr. West cutting more ditches on his property. These ditches extended south to the Hornsby/Jones property. Mr. Chutz knew that the ditches cut by Mr. West would bring more water to the Hornsby/Jones property, but what Mr. West was doing was beyond his control.

Mr. Jones approached Mr. Chutz after the slips were cut and asked him why he had cut them. Mr. Chutz explained he did so with the permission of Mr. West and Mr. Hornsby. In the process of cutting the slips, Mr. Chutz was not aware of whether the slips were cut into the Hornsby property or the Jones property. Mr.

Chutz stated he would normally go to the courthouse to check property records to be sure he did not intrude on property he was not allowed to enter, but on this occasion, he did not check any property records since he had already received a written right of way from the Hornsbys in either 2002 or 2003.

While the depositions often conflict with each other and very few clear dates are given, we note certain undisputed facts. Mrs. Jones was donated a 1.5 acre parcel of the Hornsby property on February 2, 2001. It was on this parcel that the Joneses built their house, with the backyard bordering the West property and the Hornsby/Jones ditch running through it. About a year later, according to Mr. Chutz's affidavit, the District began maintenance on the Hornsby/Jones ditch. The Wests alleged in their petition for damages that in 2004, the Hornsbys excavated their ditch and deposited the spoils on the West property, causing drainage problems on their side.

On or about September 19, 2016, Mr. West and Mr. Hornsby met with the District board on separate occasions to reach a solution to the drainage problem. Mr. Chutz testified that Mr. West and Mr. Hornsby both agreed that slips could be dug from the West property into the Hornsby/Jones property to assist Mr. West with his drainage, but Mr. Hornsby contradicted that testimony by stating he only gave the District permission to maintain the Hornsby/Jones ditch. The Joneses did not take part in the board meetings with the District. Although Mrs. Hornsby, as owner, had authority over the Hornsby property, she admitted in her deposition that Mr. Hornsby also had authority to permit work on the Hornsby property. Some time after these board meetings, the District dug the slips. Mrs. Hornsby donated a 3.6 acre parcel of the Hornsby property to the Joneses on February 28, 2018. Also in 2018, the Joneses, Mr. West, and Mr. Hornsby attempted to resolve their drainage disputes. This had to have occurred before June 6, 2018, when the

13

Honsbys and Joneses filed their reconventional demand against the Wests and their third party demand against the District.

Although no clear dates are given, the Wests dug the ditches on their property after the District dug the slips, so that they could connect and drain the West property via the Hornsby/Jones ditch. This action by the Wests caused a drainage issue behind the Jones property. According to Mr. Jones, one or more slips are either on or near his property, and it is clear that the Joneses never granted permission to anyone for any purpose other than to maintain their portion of the Hornsby/Jones ditch.

By our review of the record, we find there is a genuine issue of material fact as to whether the Hornsbys permitted the District to cut the slips into the Hornsby/Jones ditch. While Mr. Chutz testified he had permission to do so from both Mr. West and Mr. Hornsby, Mr. Hornsby testified the District only had his permission to perform maintenance on the ditch. Due to this genuine issue of material fact, the District is not entitled to summary judgment against the Hornsbys.

With respect to the Joneses, the record has not been sufficiently established for us to determine if the slips were cut into the Jones property when the Joneses did in fact own their property. The 2001 donation is not contained in the record, so it is impossible to determine that parcel's precise location and if slips were cut into that parcel of land. Furthermore, we are unable to tell from the record if slips were cut into the 3.6 acre parcel before or after it was donated to the Joneses. Since there remains a genuine issue of material fact as to whether the Joneses had authority over the Jones property at the time slips were cut into it, if slips were in fact cut into the Jones property, summary judgment in favor of the District and against the Joneses is not appropriate at this time.

The trial court found that the District had established a statutory servitude under La. R.S. 38:113, located to the south of the West property and north of the Hornsby/Jones property. The trial court stated in its oral reasons that "[the District] maintained drainage only, had no new buildup of dirt, none was added to the property. They have a statutory servitude. It exists under [La. R.S. 38:113]." This declaration in the judgment amounts to declaratory relief that was not sought by any of the parties in their pleadings. For a declaratory judgment to be granted, there must be a justiciable controversy, as courts are not permitted to issue advisory opinions based on a contingency which may or may not occur. *Louisiana Supreme Court Committee on Bar Admissions ex rel. Webb v. Roberts*, 2000-2517 (La. 2/21/01), 779 So.2d 726, 728. Furthermore, a declaratory judgment cannot be rendered in a summary proceeding. La. C.C.P. 851; *In re Melancon*, 2005-1702 (La. 7/10/06), 935 So.2d 661, 665.

It appears that the trial court attempted to correct this error by including in the record a copy of the judgment where the decree with regard to La. R.S. 38:113 was redacted with the handwritten statement "Reasons <u>not</u> Judgment." However, this is an unsigned copy of the judgment and is not subject to this appeal. <u>See</u> *Di Salvo v. Picard*, 303 So.2d 900, 902. The signed judgment on appeal contains an improper declaratory judgment, and as such, we vacate that portion of the judgment that declares the District established a statutory servitude under La. R.S. 31:113. We therefore pretermit any discussion as to whether such a servitude has been established. Also, due to the above issues of material fact, we pretermit any discussion on the District's liability to the Hornsbys and/or Joneses for damages and inverse condemnation.

**DECREE**

The judgment of the Twenty-first Judicial District Court in favor of the appellee, Livingston Parish Gravity Drainage District # 2 is reversed in part and

vacated in part, and this matter is remanded for further proceedings in conformity with this opinion. Appellate costs in the amount of $1,716.50 are assessed to Livingston Parish Gravity Drainage District # 2.

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**

ROGER WEST & DARNELL WEST

VERSUS

CAROLYN & PAUL HORNSBY AND AMY JONES & JEFFREY JONES

*************************************************

McClendon, J., concurs.

I concur in the result reached by the majority.